■    In the Matter of WESTHAMPTON NURSING HOME, Appellant, v ROBERT P. WHALEN, as Commissioner of Health of the State of New York, et al., Respondents.—Appeal from a judgment of the Supreme Court at Special Term, entered July 14, 1977 in Albany County, which treated the proceeding brought by the petitioner pursuant to CPLR article 78 as an action for a declaratory judgment, and dismissed the petition. Petitioner is a licensed residential health care center facility participating in the Medicaid program, a joint Federal-State grant-in-aid program, established pursuant to subchapter 19 of the Federal Social Security Act (US Code, tit 42, subdch 19, § 1396 et seq.). In order to participate, petitioner executed a "Provider Agreement" with New York State under section 1396a (subd [a], par [27]) of title 42 of the United States Code whereby it agreed to provide nursing home services in exchange for payment based upon reimbursement of the costs incurred by petitioner in providing such services, and in accordance with regulations established by the Commissioner of Health of the State of New York. The reimbursement rates were established by the commissioner and certified by the Director of the Budget pursuant to article 28 of the Public Health Law. On July 21, 1975, the union representing petitioner's employees notified petitioner that a strike would be called if petitioner did not pay its employees, effective August 1, 1975, at a wage rate recommended by a mediator. Petitioner determined that it could not meet the union demand and withdrew from negotiations. The Department of Health was notified of the impending strike. The employees thereafter engaged in a

strike threatening the closure of the facility. On August 7, 1975, petitioner and the union entered into an agreement settling the strike. On August 25, 1975, the Assistant Commissioner of Health wrote a letter to petitioner stating "This is to advise you that the Medicaid rate for your facility is being revised to reflect an adjustment in the calculation of the allowable salary costs. The rate is being revised as follows, and is effective for the period September 1, 1975 through December 31, 1975. The rate includes an adjustment for the months January to July 1975 to pick up contract to 7/31/75 and the month of August to pick up the new contract effective 8/1/75." The daily reimbursement rate was increased from $37.67 to $43.78. Effective January 1, 1976, an interim rate of $40.63 was established for reimbursement to the petitioner. This rate was appealed and was subsequently increased to $40.89. In the month of October, 1976, new regulations were promulgated for the establishment of permanent rates. On November 1, 1976, a reimbursement rate of $32.92 was established for petitioner retroactive to January 1, 1976. Again petitioner appealed and the rate was increased to $33.11. Effective January 1, 1977, the petitioner's rate was increased to $34.50 and, on March 31, 1977 was increased to $37.75. On May 20, 1977, petitioner commenced this proceeding seeking a declaration that the determination of its 1976 and 1977 reimbursement rates was arbitrary, capricious, unreasonable and null and void, and further directing respondents to reimburse it retroactively to January 1, 1976 at a rate based upon the reasonable costs incurred by it. The petition alleged that these reimbursement rates failed to take into consideration the increased labor costs required by its contract with the union effective August 1, 1975, which contract petitioner entered into in reliance upon the commissioner's assurance that the increased costs resulting therefrom would be reimbursed, and that the commissioner was estopped from refusing to reimburse such increased costs. It was further alleged that the commissioner had arbitrarily refused to include in the rate determination all of petitioner's motor vehicle expenses, operators' salaries, New York State business taxes, and its property costs. Special Term considered each of the items separately. On the issue of the failure of the commissioner to include in the rate determination all of the increased labor costs arising by the union contract, the court determined that there was no evidence of a contract between petitioner and respondents with regard to the increased costs over an extended period. Special Term noted that the Department of Health had notified all health care facilities on May 12, 1975 that labor negotiations were at the risk of the facility, and that, consequently, the petitioner should not have assumed that Medicaid programs would pick up any costs incurred as the result of such negotiations. Special Term concluded that the rate was computed in accordance with the rules and regulations of the Department of Health, and the application of a factor projecting allowable cost increases to the allowable base period data (10 NYCRR 86-2.12) did not constitute an unreasonable basis for the rate determination—although this did not include the actual costs of petitioner's wage increases—because subdivision 3 of section 2807 of the Public Health Law did not mandate reimbursement for all efficiently incurred expenses, but only required a projection of a rate which was reasonably related to the costs of efficient production. On the issue of the alleged failure to reimburse property costs correctly, Special Term determined that petitioner did not specify in what respect it claimed error in computing this allowance, and that a review of the exhibits indicated a proper computation had been made. On the issue of automobile expenses, Special Term concluded that the allowance of $1,800, based upon 13 cents

per mile, instead of the amount claimed by petitioner did not constitute an abuse of discretion. The disallowance of the New York State unincorporated business tax was held to be consistent with Federal regulations and, therefore, proper. The computation of reasonable owners' salaries was held to be in accordance with 10 NYCRR 86-2.25 which provides that "the amount to be allowed shall be equal to the amount normally required to be paid for the same service by a nonrelated employee". Special Term, therefore, dismissed the petition. On August 15, 1977, petitioner surrendered its operating certificate and ceased operations. On this appeal, petitioner again raises the contention that the commissioner arbitrarily failed to include in the computation of the reimbursement rate all of petitioner's reported automobile expenses, real property costs, operators' salaries and labor costs. The question of the New York State unincorporated business tax is not raised. The commissioner's regulations provide that the "basic rate shall be computed on the basis of allowable fiscal and statitstical data submitted by the residential health care facility for the fiscal year ended at least six months prior to the effective date of the rate." (10 NYCRR 86-2.10.) The regulations also provide for the addition to the allowable basic rate of "a factor to project allowable cost increases during the effective period of the reimbursement rate." (10 NYCRR 86-2.12.) The Public Health Law does not require the commissioner to reimburse nursing homes for all of the costs incurred in this operation (*Matter of Sigety v Ingraham,* 29 NY2d 110), but provides that payment for costs incurred for supplies and services necessary for the proper operation of a residential health care facility "shall not exceed those which would be paid in the normal course of business by a prudent buyer of such supplies or services." (Public Health Law, § 2808, subd 1, par a.) The main issue in this case involves the increased labor costs resulting from the collective bargaining agreement entered into by petitioner in August of 1975. These increased costs are, of course, not reflected in the fiscal and statistical data for the year 1974 upon which petitioner's 1976 reimbursement rate was established. While we do not consider the increase in rates in August, 1975 to be a binding agreement on the commissioner to maintain that level of reimbursement, and while we agree that the commissioner is not estopped from refusing to consider the wage increases under the union agreement, we do not agree with the commissioner's contention that, subsequent to November, 1975, a reimbursement rate may not be increased as the result of salary increases which are in excess of the projected factors used in determining a current rate by reason of former section 86.17 of the commissioner's regulations. The commissioner obviously waived this provision, which waiver is permitted by the regulations, when, in August, 1975, he revised the reimbursement rate to reflect the increases under the union contract. Section 86-2.14 of the regulations, filed on September 30, 1976 and amended and filed on November 29, 1976 and made permanent effective June 20, 1978, provides as follows: "The State Commissioner of Health may consider only those applications for prospective revisions of certified rates which are based on: (1) requests for revisions in 1975 reimbursement rates for cost increases incurred prior to effective date of this section." The revision sought by the petitioner of its 1976 reimbursement rate is based upon the request for and actual revision in its 1975 reimbursement rate for wage increases incurred in August, 1975, which date was prior to the effective date of 10 NYCRR 86-2.14 and thus appropriate for consideration by the commissioner. The other reason, advanced by the respondent previously, but not in this proceeding, for refusing to consider the wage increases was that Public Law 93-360 does not provide for binding

interest arbitration and, thus, no Medicaid reimbursement should be allowed. Public Law 93-360 (US Code, tit 29, §§ 152, 158, 183) merely provides for the mechanics of settling employee disputes in a health care institution. It does not preclude a union contract, nor the reimbursement of increased costs resulting therefrom. Furthermore, it cannot be said that a prudent employer (buyer of services) in the normal course of business faced with a strike would not submit the dispute to binding arbitration. The wage increases previously approved in August, 1975 are consistent with and do not violate the provisions of section 2808 (subd 1, par a) of the Public Health Law and, it appearing that the factor added to the 1974 wages to project cost increases was clearly insufficient, the refusal of the respondents to consider the actual wage increases was arbitrary and capricious. In regard to the operators' salaries, there is no evidence in the record as to how the respondent arrived at the figure of $27,221. On the other hand, there is no evidence in the record as to how petitioner calculated the $49,800 in salaries for its four owners. In the absence of any documentation as to the actual services performed, including time involved, no basis was provided for the commissioner to make a determination under the applicable rules and regulations (10 NYCRR 86-2.25), which provides that the "amount to be allowed shall be equal to the amount normally required to be paid for the same services provided by a nonrelated employee, as determined by the State Commissioner of Health." Under the circumstances, the commissioner properly denied relief. In regard to the allowance for real property costs, the petitioner contends that the reimbursement allowance constitutes unreasonably inadequate compensation, but does not set forth the amount to which it believes it is entitled, or the basis thereof. A probable basis for this contention was the refinancing of the mortgage on the facility which the respondents refused to consider because this refinancing did not inure to the benefit of the patients. In the absence of any evidence that such refinancing did, in fact, inure to the benefit of the patients, it cannot be said that the commissioner's determination on this issue was without a rational basis, and Special Term correctly rejected this contention. Similarly, the commissioner's determination as to automobile expenses had a rational basis, and Special Term correctly denied relief. The judgment of Special Term should, therefore, be modified to the extent of reinstating the petition and ordering respondents to recompute the reimbursement rate, taking into consideration the 1975 wage increases incurred by petitioner. Judgment modified, on the law and the facts, by reinstating the petition and declaring that the matter be remitted to Special Term for a recomputation of the reimbursement rate sought by petitioner based upon the foregoing decision, and, as so modified, affirmed, without costs. Mahoney, P. J., Greenblott, Kane, Staley, Jr., and Main, JJ., concur.