■ In the Matter of CHARLES SIGETY, Doing Business as FLORENCE NIGHTINGALE NURSING HOME, Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Williams, J.), entered August 11, 1981, in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul respondents' calculation of petitioner's 1980 Medicaid reimbursement rate for occupational therapy services. Petitioner, the owner and operator of the Florence Nightingale Nursing Home in New York City, instituted this proceeding to compel respondents to recompute the rate at which petitioner is reimbursed by Medicaid for the cost of in-house occupational therapy services made available to its patients. In 1979, petitioner discontinued its then acceptable practice of having private contractors provide these services on a fee for services basis, for which petitioner received no reimbursement, and began its own in-house occupational therapy program. Lacking any prior data with which to formulate a rate for the occupational therapy component of petitioner's over-all Medicaid reimbursement, respondents looked to the average occupational therapy costs of similar facilities in petitioner's geographical area and set petitioner's rate at 19 cents per patient per day. In 1980, respondents determined that the first six months of 1979 would serve as the base period for computation of the reimbursement rate. Pursuant to this new policy, petitioner's rate for occupational therapy was reduced to 4 cents per patient per day. It is contended that respondents' 1980 rate determination was arbitrary and capricious because it failed to consider that petitioner's occupational therapy program was in its nascent stages during the first half of 1979 and incurred greater per patient costs later that year as it became fully operational through the completion of staffing and therapeutic facilities. In dismissing the petition Special Term observed that the determination of the rate by respondents was quasi-legislative in nature and as such it could not be annulled unless there was a compelling showing of unreasonableness (*Matter of Catholic Med. Center of Brooklyn & Queens v Department of Health of State of N.Y.*, 48 NY2d 967). We reverse. The standard of review enunciated in *Matter of Catholic Med. Center* is inapplicable, for it applies only when considering a rate of general application and not to "individualized rates established for a particular litigant" (*Solnick v Whalen*, 49 NY2d 224, 231). At issue here is whether the administrative rate determination respecting this petitioner was "arbitrary and capricious" (*Beechwood Sanitarium v Axelrod*, 79 AD2d 1084). Subdivision 3 of section 2807 of the Public Health Law expressly mandates that rate schedules for payment be

"reasonably related to the costs of efficient production of such [health-related] service". The regulation promulgated by the Commissioner of Health to effectuate the purposes of this statute recites four factors which must be weighed in setting the rate for a health care facility which has not had adequate cost experience — the usual rates for comparable services in the area, satisfactory cost projections, allowable actual expenditures, and anticipated average utilization of no less than 90% (10 NYCRR 86-2.15 [b]). Respondents maintain that the rate determined met these requirements, for it was predicated on satisfactory cost projections and allowable actual expenditures. By relying on this regulation, respondents implicitly acknowledge that the data generated by the petitioner's furnishing of occupational therapy services in the past was an inadequate basis for determining its 1980 rate. Curiously, the principal reason offered by respondents in support of the 4 cents per patient per day determination is this very same inadequate 1979 data. The only other basis for the rate determination was respondents' belief that petitioner "reaped a windfall" in 1979 when petitioner was reimbursed at a 19-cent rate while providing services which were worth much less by virtue of the fact that the occupational therapy program was just beginning. The logical conclusion to be drawn is that the 1980 rate was calculated to penalize petitioner for the auspiciousness of his 1979 reimbursement. Supporting this conclusion is the fact that petitioner, by letter dated October 1, 1979, informed respondents' representative of the program's increasing per patient costs which had reached 18 cents per day. Recoupment of petitioner's 1979 surplus through the medium of an artificially low rate in 1980 is simply not allowed by the statute which requires rates to be reasonably related to actual costs, especially when, as here, the overpayment is the result of an error in judgment and not illegality (*Hurlbut v Whalen,* 58 AD2d 311, 318). Moreover, the statutory scheme for Medicaid rate reimbursement is prospective in nature and a health care facility is allowed to retain the difference when its operating costs are less than its reimbursement rate (*Matter of Beekman-Downtown Hosp. v Whalen,* 44 NY2d 124, 128). We also find unpersuasive respondents' declaration that because there is no provision available to allow consideration to be given to the phasing-in of a mandated service, such as occupational therapy, respondents were justified in using the early 1979 figures as the base period. But adopting that approach ignores the statutory command that reimbursement be reasonably related to cost; something which was obviously not achieved as the disparity between the 1979 rate of 19 cents and the 1980 rate indicates. Equally unconvincing is the argument that petitioner should not be afforded consideration for the phasing-in of the program because the nursing home had been required by statute to provide occupational therapy services since 1976 (10 NYCRR 416.4). While correct, this assertion overlooks the fact that prior to January 1, 1979, nursing homes were permitted to contract out for the provision of these services. Petitioner chose this method until it became advisable to move its services in-house when a new Department of Health policy included occupational therapy services in the all-inclusive Medicaid rate. It would be unreasonable to penalize petitioner for taking an action which the new policy clearly encouraged. Inasmuch as the reimbursement rate for occupational therapy services bears no relation to the reasonable costs of the service, it was arbitrarily and capriciously determined. An administrative hearing on the propriety of that rate should be had (see *Hartman v Whalen,* 75 AD2d 963). Judgment reversed, on the law and the facts, without costs, and matter remitted to respondent Commissioner of Health for an administrative hearing following which recalculation of petitioner's 1980 occupational therapy reimbursement rate shall be made in

accordance with the standards set forth in section 2807 of the Public Health Law and 10 NYCRR 86-2.15 (b). Casey, J. P., Mikoll, Yesawich, Jr., Weiss and Levine, JJ., concur.