■ FISHKILL HEALTH RELATED FACILITY, by JEAN KASIN, as Executrix of ROBERT KASIN, Deceased, Appellant, v ROBERT P. WHALEN, as Commissioner of Health of the State of New York, et al., Respondents. — Appeal from that part of an order and judgment of the Supreme Court at Special Term (Hughes, J.), entered June 4, 1982 in Albany County, which partially granted defendants' cross motion for summary judgment and dismissed plaintiff's third cause of action and first alternative cause of action. Plaintiff owns and operates the Fishkill Health Related Facility, a nursing home in Beacon, New York. The facility, which has been in operation since 1973, participates in the Medicaid program (US Code, tit 42, § 1396 *et seq.*) and is reimbursed for the care it provides to eligible Medicaid patients from a combination of State and Federal funds. Reimbursement rates are established pursuant to State regulations (10 NYCRR subpart 86-2) which carry out the Federal guidelines. The rate of reimbursement for a given year is determined by ascertaining a facility's allowable costs for a "base year", dividing the total of those allowable costs by the number of patient days of care provided during the base year, and then

multiplying the resulting cost per patient day by a "trend factor" to allow for inflation between the base year and the year for which the rate is being calculated. The facility's Medicaid reimbursement rate for 1976 and 1977 used 1974 and 1975 as base years. In 1974 and 1975, the facility reported as part of its costs interest payments of $32,100 and $46,845 on a loan to the facility from Herbert Kallen, the facility's landlord. The interest rate on the two-year loan was 8½% for the first three months and 24% thereafter. The Department of Health determined that the entire interest payments were nonallowable costs for purposes of plaintiff's Medicaid reimbursement rates. Defendant Commissioner of Health denied plaintiff's administrative appeal from this decision on the ground that, under 10 NYCRR 86-2.20 (b), the rate of interest paid was in excess of what a prudent borrower would pay in the money market and that the interest was paid to a lender related through "affiliation" to the borrower. Plaintiff challenged this and other determinations in a declaratory judgment action commenced in December of 1978. On cross motions for summary judgment, Special Term, *inter alia,* upheld the commissioner's decision concerning the interest by relying on the usury laws. The appeal by plaintiff followed.[1] Initially, since this action concerns an individualized rate for a single facility and not a rate of general application, Special Term erroneously applied the "compelling showing of unreasonableness" standard of review to the commissioner's decision (*Matter of Sigety v Axelrod,* 91 AD2d 1091). The proper standard to apply to the rate determination here is whether it was arbitrary and capricious (*id.*). In determining whether interest may be considered an allowable cost for purposes of a Medicaid reimbursement rate, the interest must, *inter alia,* be "at a rate not in excess of what a prudent borrower would have had to pay in the money market at the time the loan was made" and must be paid to a "lender not related through control, ownership, affiliation or personal relationship to the borrower" (10 NYCRR 86-2.20 [b]). It is conceded that market interest rates in 1974-1975, the time in question, were between 12% and 15%. Therefore, defendant commissioner's determination that plaintiff's substantially higher rate of 24% was "in excess of what a prudent lender would pay" cannot be said to be arbitrary and capricious. We do not reach the same conclusion, however, as to the commissioner's decision that none of the facility's interest expense should be an allowable cost. Defendants justify this decision mainly on the ground that a partial reimbursement of the interest would be a disincentive for plaintiff "to improve services and institute economies" (Public Health Law, § 2807, subd 3). While an agency has great latitude in interpreting its regulations (*Matter of Sigety v Ingraham,* 29 NY2d 110), it may not interpret a regulation in a manner that is inconsistent with its entire regulatory and statutory scheme (*Matter of Broadacres Skilled Nursing Facility v Ingraham,* 51 AD2d 243, 245-246). The statutory scheme here requires that Medicaid reimbursement rates for nursing homes be "reasonably related to the costs of efficient production of such service" (Public Health Law, § 2807, subd 3). The commissioner has not contested plaintiff's submissions alleging that loans that were available to it from the money market cost as much as the loan from its landlord, taking into account points, broker's fees, and attorney's fees; that unforeseen county delays in providing adequate water and sewage services to the facility delayed its full opening for nine months, thus creating cash flow problems that necessitated the loan; and that the commissioner had approved the facility even though it was poorly capitalized and thus in a poor position to get a favorable loan (Public Health Law, § 2801-a, subd 3, par [c]). Furthermore, there is absolutely no showing of poor management, missed options, or wrongdoing by plaintiff. The commissioner

---

1. Although defendants filed a notice of cross appeal from the order and judgment entered herein, they have decided not to pursue their appeal.

does not and cannot contest the necessity of the loan in order to continue the facility's operation. If the loan was valid, then it follows that some rate of interest representing the cost of the loan must of necessity be "reasonably related to the costs of efficient production of such service."[2] The commissioner's regulations define the legitimate cost of borrowing as being what a prudent borrower would pay in the money market, which is conceded to be 12% to 15% here. The only justification the commissioner has for disallowance arises out of the statutory direction that rates be set so as to provide "incentives to improve services and institute economies" (Public Health Law, § 2807, subd 3). It seems the height of arbitrariness and capriciousness for the commissioner, pursuant to that policy, to disallow an uncontested and otherwise reasonable cost of services. Moreover, there is no demonstration that merely disallowing the excess portion of the interest rate over what would otherwise be allowable would not be a sufficient incentive to institute the desired economies. Therefore, total disallowance of the interest is arbitrary and capricious and lacks any basis in the statute or regulations. The commissioner also disallowed plaintiff's interest payments on the ground that the lender was related through "affiliation" to the borrower (10 NYCRR 86-2.20 [b]). The commissioner contends that this regulation requires "arm's-length" dealings between a borrower and a lender and that the loan here was not negotiated at arm's length because the parties were in a landlord-tenant relationship. Case law interpretations of what constitutes an "arm's-length" transaction look for interrelated business structures and associations (see *Matter of Queens-Nassau Nursing Home v Axelrod,* 91 AD2d 776; *Matter of Mayflower Nursing Home v Office of Health Systems Mgt. of Dept. of Health of State of N. Y.,* 88 AD2d 192; *Matter of Demisay v Axelrod,* 87 AD2d 667, mot for lv to app den 57 NY2d 602). No business association or venture is alleged here beyond the bare fact that the lender is plaintiff's landlord. Moreover, the commissioner has accepted the lease between the landlord and the tenant-facility as being an arm's length transaction and has treated the lease payments as being fully reimbursable (cf. *Matter of Queens-Nassau Nursing Home v Axelrod, supra*). It would certainly be inconsistent to hold that the lease was an arm's length transaction and the loan between the same two parties was not. Funneling the loan to the facility through a shell corporation set up by the operator of the facility is a well-recognized, legitimate method of obtaining money for a commercial purpose that avoids the usury laws (see *Schneider v Phelps,* 41 NY2d 238, 242; *Leader v Dinkler Mgt. Corp.,* 20 NY2d 393, 399-400) and it does not, without more, create an affiliation or a nonarm's length transaction. Therefore, disallowing the interest on this basis was also arbitrary and capricious. For all of the foregoing reasons, the order should be modified to permit plaintiff's interest to the extent of 15% as an allowable cost in computing its Medicaid reimbursement rates for 1976 and 1977. Order and judgment modified, on the law and the facts, by reversing so much thereof as granted defendants' cross motion for summary judgment dismissing plaintiff's third cause of action and first alternative cause of action; plaintiff's motion for partial summary judgment granted to the extent of declaring that plaintiff is entitled to 15% for interest payments as an allowable cost in computing its Medicaid reimbursement rates for the years 1976 and 1977, and, as so modified, affirmed, with costs to plaintiff. Mahoney, P. J., Sweeney, Kane, Weiss and Levine, JJ., concur.

---

2. The intent of the Legislature is even more clearly expressed in the new language of subdivision 3 of section 2807 of the Public Health Law (L 1982, ch 536, § 3, eff Jan. 1, 1983) requiring that rates be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities".