■ In the Matter of ALEXANDER HARTMAN, Doing Business as EAST HAVEN HEALTH RELATED FACILITY, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants. — Appeal from a judgment of the Supreme Court at Special Term (Cobb, J.), entered September 1, 1983 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Commissioner of Health denying petitioner's Medicaid reimbursement rate appeal for the years 1976 and 1977. ¶ Petitioner is the owner and operator of East Haven Health Related Facility, a residential health care facility located in The Bronx and licensed by respondent Commissioner of Health pursuant to article 28 of the Public Health Law. Under the Medicaid program, nursing home facilities such as petitioner's are reimbursed for services rendered to eligible Medicaid patients at rates established by the commissioner pursuant to sections 2807 and 2808 of the Public Health Law. When approved by respondent Director of the Budget, the rates are paid by local social services districts under the jurisdiction and supervision of the commissioner. ¶ Regulations mandate that a facility's cost report be submitted to the Department of Health "no later than three months after the close of the cost reporting year" (10 NYCRR 86-2.2 [b]). Pursuant to subdivision 4 of section 2807 of the Public Health Law, the commissioner must then notify each facility of its approved rate "at least sixty days prior to the fiscal year for which the rate is to become effective".

¶ However, where, as here, a facility initially opens, the commissioner is authorized to calculate the facility's reimbursement rate based upon costs incurred during the first six-month period during which the facility achieves an over-all average occupancy rate of 90% (10 NYCRR 86-2.2 [e]). Until such a rate is achieved, a facility is reimbursed on a group average basis based upon the average rate of other comparable facilities (10 NYCRR 86-2.15). Petitioner's facility opened in August, 1974. Its cost for 1974, therefore, could not have been used to calculate reimbursement rates for 1974 or 1975. Accordingly, the facility was reimbursed on the group average basis during that period. Petitioner's facility first achieved an over-all occupancy rate of 90% in 1975. The commissioner then used the 1975 reported costs as the basis for calculating rates for 1976 and 1977. These rates were approved by the Director of the Budget. ¶ However, in August, 1975, petitioner entered into a labor contract which provided for large salary increases for petitioner's personnel, effective retroactively to July 1, 1975. Accordingly, petitioner's 1975 cost report included labor costs for six months at a much higher rate. Petitioner contends that the commissioner erred in failing to take into account, for purposes of rate determination for 1976 and 1977, the facility's higher costs and should have adjusted the figures used in the 1975 report to reflect a full 12 months at the higher labor rate. Consistent with that position, petitioner administratively appealed the determination setting the facility's 1976 and 1977 Medicaid reimbursement rate. The commissioner rejected petitioner's contention with respect to the use of 1975 costs as a basis for calculating the 1976 and 1977 rates. ¶ In June, 1978, petitioner initiated a CPLR article 78 proceeding to compel revision of the Medicaid reimbursement rates. Special Term dismissed the petition, holding that petitioner failed to appeal the denial of his request for a rate review to the rate review board. In May, 1980, we reversed Special Term and remitted the matter to the commissioner to consider the merits of petitioner's rate appeal (*Hartman v Whalen*, 75 AD2d 963). Two years later, by letter dated October 20, 1982, petitioner was informed that its appeal for labor cost increases was denied.[*] ¶ Petitioner then commenced this CPLR article 78 proceeding seeking to annul the determination of the commissioner. Special Term held that the commissioner's denial of petitioner's appeal was arbitrary and capricious since the reimbursement rates promulgated were not reasonably related to the costs of providing service. The matter was remitted to the commissioner "for a prompt hearing and the establishment of a proper rate of reimbursement for the years 1976 and 1977". This appeal by respondents ensued. ¶ Special Term erred in applying the "cost factor" standard for Medicaid reimbursement found in subdivision 3 of section 2807 of the Public Health Law. The proper standard of "program management" and "quality of patient care" is set forth in subdivision 1 of section 2808 of the same statute. In *Matter of Kaye v Whalen* (44 NY2d 754, app dsmd 439 US 922), the Court of Appeals stated: "[W]ith the enactment of subdivision 1 of section 2808 of the Public Health Law, prior to 1976, the appellants were put on notice that the standard of reimbursement had been altered from 'cost' factors (Public Health Law, § 2807, subd 3) to consideration of, *inter alia,* 'the operation and program management of the facility, as well as to the quality of patient care provided by the facility'" (*id.,* at p 755). Thus, it is clear that the standard of Medicaid reimbursement employed in the instant proceeding should have been the "program management" and "quality of patient care" standard found in subdivision 1 of section 2808 of the Public Health Law rather than the "cost

---

[*] We note our continuing displeasure with the commissioner's delay in determining matters related to the administration of nursing homes (see *Matter of Kupersmith v Public Health Council,* 101 AD2d 918; *Matter of Cortlandt Nursing Home v Axelrod,* 99 AD2d 105).

factor" standard found in subdivision 3 of section 2807 of the same statute (see *Matter of Westhampton Nursing Home v Whalen,* 67 AD2d 1017, revd on other grounds 60 NY2d 711). ¶ Reviewing the commissioner's decision pursuant to the standard set forth in subdivision 1 of section 2808 of the Public Health Law, we are of the view that it is not arbitrary and capricious. Initially, since the rate-making decision is legislative and not adjudicatory, petitioner is not entitled to an adjudicatory hearing (*Matter of White Plains Nursing Home v Whalen,* 53 AD2d 926, affd 42 NY2d 838, cert den 434 US 1066). Our statement to the contrary in *Matter of Sigety v Axelrod* (91 AD2d 1091, 1092) was based on the unique facts and circumstances of that case (see *Matter of White Plains Nursing Home v Whalen, supra,* p 927). ¶ Under the provisions of section 2808 (subd 1, par a) of the statute, "payment for costs * * * shall not exceed those which would be paid in the normal course of business by a prudent buyer of such supplies or services". Thus, the issue is narrowed to whether petitioner was a "prudent buyer" of labor costs. Resolution of this issue can be found in *Matter of Westhampton Nursing Home v Whalen* (60 NY2d 711, *supra*), where the Court of Appeals, under facts remarkably similar to those herein, found the commissioner's policy of not adjusting rates because of labor negotiations to be neither unreasonable nor irrational. Accordingly, the denial of petitioner's appeal was neither arbitrary nor capricious. ¶ Judgment reversed, on the law, without costs, determination confirmed, and petition dismissed. Mahoney, P. J., Kane, Casey, Weiss and Mikoll, JJ., concur.