■ In the Matter of SAMARITAN HOSPITAL, Appellant, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Hughes, J.) entered January 6, 1984 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the State Department of Health setting petitioner's 1980 and 1981 Medicaid and Blue Cross reimbursement rates.

Petitioner is a provider of medical services for persons entitled to Medicaid and persons insured by Blue Cross. Respondent Commissioner of Health promulgated regulations (10 NYCRR part 86) according to subdivision 3 of section 2807 of the Public Health Law establishing the methodology for the computation of

Medicaid and Blue Cross reimbursement rates. Petitioner's reimbursement rates for 1980 and 1981 were calculated pursuant to the applicable regulations.

In 1977, the rate-setting methodology for the first time incorporated a length-of-stay (LOS) provision designed to counteract the incentive to increase the length of hospital stay per patient to realize greater reimbursement, a situation which had developed under earlier reimbursement rate regulations. The LOS methodology used statistically compared lengths of stay for similar patients and services in similar hospitals to develop an average LOS figure for such a "peer group". A hospital's reimbursement rate was then set employing the average LOS, and if the hospital's actual patient stay (patient days) exceeded the allowable rates, the excess days were disallowed in calculating future reimbursement rates. The hospital was given a "corridor" by which it could exceed the average LOS without adverse results; a one-day corridor was used in 1980, a one-half-day corridor in 1981).

The 1980 LOS methodology differed from the 1981 LOS methodology in that in 1980, 1978 base-year data were used, while 1981 used 1979 base-year data. Further, in 1981 the base-year patient data were divided into more age/diagnostic classifications (cells) to improve the standards.

A hospital could apply for a waiver of the established LOS disallowance through an administrative procedure (10 NYCRR 86-1.17 [a] [7]). The waiver was obtainable to the extent that the excess LOS days were attributable to "alternate care days". "Alternate care days" were days the patient had to remain in the hospital, although he could have been given adequate care in a nursing facility, because no such nursing facility had a vacancy.

Petitioner filed administrative appeals concerning its 1980 and 1981 reimbursement rate determinations. It was decided that petitioner had failed to maintain adequate records pertaining to efforts to find nursing facilities for alternate care patients in regard to 1980; petitioner could not, therefore, obtain a waiver of the 1980 LOS disallowance claimed due to alternate care days beyond its control (18 NYCRR 505.20 [b] [3] [ii]). On its administrative appeal for 1980, petitioner argued that a factual hearing should have been held to determine, notwithstanding the record-keeping violation, whether alternate care facilities were in fact available during 1978. In regard to its 1981 rate appeal, petitioner claimed that the corridor reduction to one-half day denied it equal protection of the laws and was arbitrary and capricious. The rate review officer concluded that there was no issue of fact raised in the 1980 rate appeal and that

the corridor reduction in 1981 was entirely proper. Petitioner then initiated this CPLR article 78 proceeding to review that determination. Special Term, in dismissing the petition, held that petitioner was not denied due process or equal protection and that the 1980 and 1981 methodologies were reasonable and rational. This appeal followed.

Special Term properly dismissed petitioner's application. The judgment should be affirmed.

Petitioner's contention that it was denied due process of law by Special Term's refusal to hold an evidentiary hearing is without merit. Petitioner argues that it should have been afforded an evidentiary hearing concerning the 1980 rate appeal to determine if it had reasonably complied with the requirements for attempting to locate alternate care facilities. However the regulations require a hospital to file "all supporting *documentation* within six months of the date of the letter of intent to appeal" to the Commissioner of Health (10 NYCRR 86-1.17 [a] [7]; emphasis added). Regulation 18 NYCRR 505.20 requires documentation of efforts to locate alternate care facilities, which would be relied upon in determining a LOS waiver.

Petitioner did not comply with the documentation requirements and was, therefore, unable to demonstrate that its costs in excess of the LOS standard were attributable to alternate care days beyond its control. This administrative procedure afforded due process to petitioner. The record demonstrates that petitioner was facially unable to comply with the documentation requirements, which are mandatory. Thus, Special Term properly denied petitioner an evidentiary hearing to allege reasonable compliance with those requirements.

Petitioner's next contention, that it was denied equal protection of the laws, is rejected. To support an equal protection argument, petitioner must show that any discriminatory effect of the regulations was the result of respondents' " 'evil eye' " toward discrimination against petitioner (see *Matter of 303 West 42nd St. Corp. v Klein*, 46 NY2d 686, 695; *Matter of Feigman v Klepak*, 62 AD2d 816, 819). The record fails to present any such evidence.

Petitioner's final argument, that the length-of-stay methodologies were arbitrary and capricious, is also unpersuasive. Petitioner makes no assertion that its particular reimbursement rate computations were erroneous. Rather, its challenge is directed to the methodologies and regulations generally.

A challenge to a particular hospital's individual reimbursement rate is reviewed on the standard of whether the rate

calculations were arbitrary and capricious (*Matter of Sigety v Axelrod,* 91 AD2d 1091) or if there is a reasonable basis in law or in fact to support the rate determination (*Matter of Glengariff Corp. v Axelrod,* 93 AD2d 900). Where a challenge is to the methodologies in general, as here, the challenger must make a compelling showing of unreasonableness (*Matter of Catholic Med. Center v Department of Health,* 48 NY2d 967, 968-969; *Fishkill Health Related Facility v Whalen,* 95 AD2d 974). This record is devoid of any evidence of unreasonableness, let alone a compelling showing of unreasonableness.

Further, the finding of reasonableness is supported by *New York City Health & Hosps. Corp. v Blum* (708 F2d 880), which upheld the 1980 and 1981 LOS methodologies in the face of a general challenge. And, we also note that *Matter of Sisters of Charity Hosp. v Axelrod* (59 NY2d 872) upheld the use of the one-half-day corridor in regard to the 1981 LOS rather than the one-day corridor used in 1980.

Judgment affirmed, without costs. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.