In the Matter of MICHAEL TENENBAUM, Doing Business as RESORT NURSING HOME et al., Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, Respondent.

Third Department, December 3, 1987

**APPEARANCES OF COUNSEL**

*Marvin L. Tenzer, P. C.,* for appellant.

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Wayne L. Benjamin* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner operates Resort Nursing Home and Resort Health Related Facility, each a 280-bed residential health-care facility. Both facilities are rented pursuant to leases entered into and approved by respondent prior to March 10, 1975. Under the leases, petitioner pays $504,000 in rent annually on each facility and is responsible for the cost of any leasehold improvements.

Prior to March 10, 1975, rental payments made by operators of facilities such as petitioner's, up to a ceiling figure established by respondent, which varied based upon location in the State and age of the facility, were considered a component of the facilities' capital costs for the purpose of calculating their Medicaid reimbursement rates. Using this methodology, petitioner's maximum annual reimbursable rental was $1,800 per bed or $504,000 per facility. This system of calculation was criticized because nursing home operators had little incentive to negotiate a lease for less than the lease ceiling, as the vast majority of the patients are Medicaid sponsored. Since March 10, 1975, rent reimbursements have been based upon the capitalized cost of constructing the facility to the landlord; under this method, petitioner would have been reimbursed $356,912 for the nursing home and $460,640 for the health-related facility in 1984, the year in question. By Public Health Law § 2808 (2-a) (c), respondent was authorized to exempt facilities from the new rule to grandfather in operators who had negotiated leases under the old, more generous rule, so long as respondent also avoided excessive reimbursement. Under this grant of authority, respondent chose to reimburse those facilities whose leases had been approved prior to March 10, 1975 at actual costs subject to the arm's length lease ceilings previously employed (10 NYCRR 86-2.21 [c] [2]). In the regulation establishing this policy, the arm's length lease ceilings were denominated "the historical limitations set forth by the commissioner" (10 NYCRR 86-2.21 [c] [2]).*

---

* Both parties concur in the understanding that the quoted phrase refers to nothing other than the arm's length lease ceilings in place prior to March 10, 1975. These ceilings are set out in the report of Moreland Act Commission (Nursing Homes and Residential Facilities: Pruning the Money Tree, Jan. 1976, at 172-173).

In 1984, petitioner expended $13,299 and $20,911 for lease-hold improvements to his nursing home and health-related facility, respectively. Because petitioner's rent equals the arm's length lease ceiling for his facilities, he effectively went unreimbursed for the leasehold improvements he was obliged to make for Medicaid compliance. There is no hint in the record that in arriving at petitioner's reimbursement rate respondent has done anything other than mechanically apply the historic arm's length lease ceilings *(cf., Matter of Hudson Val. Nursing Center v Axelrod,* 130 AD2d 862, 866; *Matter of Roman Catholic Diocese v New York State Dept. of Health,* 109 AD2d 140, 146 [Levine, J., dissenting in part], *revd on dissenting opn below* 66 NY2d 948). Petitioner brought this CPLR article 78 proceeding challenging the use of these ceiling figures because they are not filed as a regulation with the Department of State. Supreme Court dismissed the petition; we affirm.

At the outset, we note that petitioner has abandoned any factual attacks by failing to exhaust his administrative remedies, choosing instead to question respondent's authority to act as he has *(see, Matter of Tennenbaum v Axelrod,* 128 AD2d 968, 968-969). The sole issue presented is whether NY Constitution, article IV, § 8 requires that the table of numbers comprising the arm's length ceilings be specifically filed as a regulation or may merely be incorporated by reference through the phrase "historical limitations set forth by the commissioner" (10 NYCRR 86-2.21 [c] [2]).

While we perceive the arm's length ceilings as fixed, general standards to be filed with the Department of State to be effective *(see, Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951, *supra; see also,* NY Const, art IV, § 8), we are of the view that the language of the regulation satisfies this constitutional requirement, if only marginally.

The requirement that rules and regulations be filed serves to give the public notice of their existence and provides a central place where one may examine a rule or regulation that affects his particular interest *(Matter of Jones v Smith,* 64 NY2d 1003, 1006). Although the language "historical limitations set forth by the commissioner" (10 NYCRR 86-2.21 [c] [2]) is less precise than we would like, it does satisfy the purposes underlying the filing requirement. It puts the public on notice that there is a limit on the actual costs that will be

reimbursed, it informs them that the limits have been set, and it suggests to those interested that the exact figures may be obtained from respondent.

Citing *Matter of Eden Park Health Servs. v Axelrod* (114 AD2d 721), petitioner also argues that the term "set forth" requires respondent to file the ceiling figures before they become effective. Read in context, *Eden Park* required that ceilings relating to movable equipment, which respondent specifically obligated himself to establish and promulgate, were not in fact promulgated and hence, the ceilings were invalid. In contrast, the language here at issue indicates that the ceilings had already been in existence for some time and were readily available, if not generally known, to the operators of health-care facilities.

MAHONEY, P. J., KANE, MAIN and LEVINE, JJ., concur.

Judgment affirmed, without costs.