NEW YORK STATE HEALTH FACILITIES ASSOCIATION et al., Appellants, v DAVID AXELROD, as Commissioner of the Department of Health of the State of New York, Respondent.

Third Department, February 22, 1990

**APPEARANCES OF COUNSEL**

*Fink, Weinberger, Fredman, Berman, Lowell & Fensterheim, P. C. (Gerald Kahn* and *Stanley H. Lowell* of counsel), for appellants.

*Robert Abrams, Attorney-General (Kathleen Liston Morrison* and *Nancy A. Spiegel* of counsel), for respondent.

**OPINION OF THE COURT**

YESAWICH, JR., J.

Petitioners* are individual nursing homes, which participate in the Medicaid program, and the association which represents them. It is alleged that petitioners rent their respective facilities pursuant to "arm's length leases" entered into prior to March 10, 1975. These leases obligate petitioners to pay a base rent, and also to underwrite all real estate taxes, leasehold improvements, maintenance outlays and the cost of insurance premiums on the real property. Respondent developed a "maximum ceiling rental schedule" which limits reimbursement specifically for facilities which incur costs under arm's length leases. Because petitioners' base rents are at or near these ceilings, they generally do not recoup the actual costs for which they become liable for leasehold improvements and insurance premiums. Respondent does, however, reimburse all property taxes, regardless of the reimbursement ceiling schedule. Petitioners pointedly observe that these ceilings no longer apply to those facilities operated pursuant to nonarm's length leases and facilities operating under leases entered into after March 10, 1975, and never applied to owner-operated facilities; these facilities are all reimbursed according to capitalized costs (see, 10 NYCRR 86-2.21 [e]).

The association representing the individual petitioners contacted respondent urging it to eliminate the reimbursement ceiling. Respondent was unagreeable and the instant suit, seeking a judgment declaring respondent's refusal to repay petitioners' actual costs in excess of the reimbursement ceilings illegal, followed. Petitioners moved for summary judgment and respondent cross-moved for the same relief. Supreme Court converted the action into a CPLR article 78 proceeding and then dismissed the matter. Petitioners appeal; we affirm.

■ Whether, as petitioners argue, respondent's ceilings, admittedly not published as a regulation or filed with the Secretary of State, were ineffective (see, NY Const, art IV, § 8) is an issue that this court has already determined adversely to petitioners' position (Matter of Tenenbaum v Axelrod, 132 AD2d 37, 39-40, appeal dismissed 71 NY2d 950). The distinctions petitioners attempt to draw between themselves and the

---

* This matter having been converted into a CPLR article 78 proceeding, the parties are referred to herein as petitioners and respondent.

circumstances presented in *Matter of Tenenbaum v Axelrod (supra)* are insubstantial, add nothing new to the issue and do not compel a different result.

In a collateral argument, petitioners urge that the reimbursement ceilings are demonstrably unreasonable *(see, Matter of Samaritan Hosp. v Axelrod,* 107 AD2d 911, 914, *appeal dismissed* 65 NY2d 636). Reproving respondent, they advise that when the ceiling schedule was initially established in 1967 respondent intended the ceilings to include leasehold improvements and property insurance premium costs. But that is of no consequence. Of significance is how respondent in fact interpreted the ceiling schedule, for it is respondent's application of the schedule that is actually being challenged. To fairly assess that interpretation it is essential to bear in mind the immitigable statutory constraint under which respondent operates, namely, that he may only reimburse health care providers for those expenses an efficiently and economically run facility would reasonably incur (Public Health Law § 2807 [3]), not their actual, albeit necessary, expenses. Respondent did just that. There is no evidence in the record that respondent brought to bear anything but his expertise and experience in reaching the conclusion that an efficiently operated nursing home would not exceed the maximum reimbursement rates he fixed *(see, Matter of Sigety v Ingraham,* 29 NY2d 110, 113).

Petitioners also suggest that the ceilings are manifestly unreasonable because the cost of major capital repairs necessary to ensure proper care of the aged, added to petitioners' base rents, exceed the prescribed ceilings. And petitioners further contend that respondent's inclusion of real property taxes as a reimbursable operating cost, notwithstanding repayment thereof to the facilities, breaches the ceiling schedule. It suffices to note, however, that respondent's handling of these various expenditures, even if not symmetrical, has not been shown to be inconsistent with the Public Health Law *(see, supra,* at 114-115).

Although respondent currently places no similar ceiling on reimbursements to owner-operated facilities, those facilities acquired through nonarm's length leases, or those acquired through arm's length leases entered into after March 10, 1975, respondent's reimbursement restrictions do not, as petitioners charge, violate the Equal Protection Clauses of the State or Federal Constitutions (US Const 14th Amend; NY Const, art I, § 11). It is petitioners who shoulder the burden of showing

that there was no rational basis for the challenged differentiation (20 NY Jur 2d, Constitutional Law, § 353, at 507), yet they offer absolutely nothing to support their equal protection claim. Moreover, petitioners can opt to have their real property allowance calculated under the historical cost system, the same methodology presently employed to reimburse all other facilities *(see,* 10 NYCRR 86-2.21 [c] [3]).

Of petitioners' remaining arguments, we find it necessary to speak only to their claim that respondent should be estopped from limiting petitioners' reimbursement to the maximum ceiling schedule owing to the fact that the Public Health Council heretofore approved their fitness to function as nursing homes. This claim is premised on Public Health Law § 2801-a (3), which prohibits approval of the establishment of a nursing home unless the Public Health Council is satisfied as to the financial resources of the proposed institution and its sources of future revenues. Petitioners maintain that inasmuch as they submitted their leases to the Public Health Council, they necessarily relied on respondent to set reimbursement rates that would take into account, not only their base rent amounts, but also the additional expenses the leases contemplated. The short answer to this argument is that the doctrine of estoppel is not applicable against the State when, as here, it acts in a governmental capacity *(see, Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88, 93-94).

KANE, J. P., CASEY, MIKOLL and LEVINE, JJ., concur.

Judgment affirmed, without costs.