OPINION OF THE COURT
Barbara G. Zambelli, J.
The petitioner Cabrini of Westchester, doing business as St. Cabrini Nursing Home, is a not-for-profit, 304 bed nursing home located in Dobbs Ferry, New York. Petitioner is licensed by the New York State Department of Health as a residential health care facility. Petitioner is a certified provider in the Medicaid program. Respondent Richard F. Daines is the Commissioner of the Department of Health for New York State. As such, pursuant to Public Health Law § 2807 (3), he determines and certifies rates of payment for services rendered to Medicaid recipients by facilities such as petitioner’s. Respondent Laura L. Anglin is the Budget Director of the State of New York. As such, pursuant to Public Health Law § 2807, she is responsible for approving the Medicaid reimbursement rates determined and certified by the Commissioner of the Department of Health.
Petitioner brings this CPLR article 78 proceeding to challenge, as “arbitrary and capricious; violative of its own regulations and duties enjoined upon it by law; affected by errors of law; and an abuse of discretion,” respondent’s determination of February 29, 2008 that petitioner would no longer be considered as being “hospital-based” for the calculation of the indirect component of its Medicaid costs as of January 1, 2009. Petitioner asserts that while its affiliated hospital closed on approximately March 17, 2008, it should still be considered a “hospital-based” facility because its operating costs are determined by reference to a base year for which petitioner had an affiliated hospital; petitioner further argues that respondents’ attempt to change its designation to a “free-standing” facility prior to a change in petitioner’s base rate status to a year in which the affiliated hospital was actually closed (i.e., 2009 and thereafter) constitutes an impermissible retroactive application of the law. Petitioner also asserts that by determining petitioner to be a “free-standing” facility as of January 1, 2009, respondents’ decision acts as an “improper taking of [petitioner’s] vested property rights in its hospital-based Medicaid reimbursement and amounts to a deprivation of property without due process of *857 law.” Petitioner seeks an annulment of respondents’ determination, as well as an order compelling respondents to continue to designate it a hospital-based facility for purposes of Medicaid reimbursement.
Pursuant to the methodology utilized by the Department of Health in determining the Medicaid reimbursement rate for nursing facilities, the reimbursement rate is comprised of four components: direct, indirect, noncomparable and capital (10 NYCRR 86-2.10 [b] [1] [ii]). The portion of the rate at issue in this proceeding is the “indirect” reimbursement rate, which consists of costs not directly related to patient care, such as administrative services, housekeeping, food, education services, grounds and maintenance (10 NYCRR 86-2.10 [d] [1] [i]-[xiii]). Nursing home Medicaid reimbursement rates are calculated by reference to costs reported by the home in a “base” year. Pursuant to Department of Health regulations, 1983 was used as the base year for such reimbursement rates since 1986 (10 NYCRR 86-2.10 [b] [1] [i]; Fargione affidavit 1i 6; Rizzo affidavit 1ÍH 4, 5); however, pursuant to recent legislative action, 2002 was established as a new base year for Medicaid reimbursement rates, but this “rebasing” of rates is being phased in through 2009 (Public Health Law § 2802 [2-b]; Fargione affidavit H 6, Rizzo affidavit 11 5). One of the factors considered in determining a facility’s “indirect” reimbursement rate is whether the facility is “hospital-based” or “free-standing”; a “hospital-based” facility is affiliated with a hospital from which it derives and reports its costs on the basis of a Medicare cost allocation methodology (see 10 NYCRR 86-2.10 [a] [13] [i]). Nursing homes that are hospital-based receive higher rates of Medicaid reimbursement than do free-standing facilities (Fargione affidavit 1i 20; Rizzo affidavit If 6). Additionally, the “trend factor” for hospital-based facilities, which is the adjustment of the rates to account for such issues as inflation, is higher than that for freestanding facilities (10 NYCRR 86-2.12 [c]).
Petitioner began operating as a nursing home in 1973. Since its inception, the Department of Health classified petitioner’s facility as hospital-based, resulting from petitioner’s affiliation with Cabrini Medical Center in Manhattan. In 2004, petitioner obtained certificate of need (CON) approval from the Department of Health for a $55 million renovation project for its facility. The CON approval required petitioner to demonstrate adequate finances for the renovation, which required consideration of, inter alia, sources of future revenue (10 NYCRR 600.2 [b] *858 [3]; Fargione affidavit 1Í 36). Also, in 2006, petitioner received tax-exempt mortgage financing of approximately $52 million for the renovation project from the Dormitory Authority of the State of New York (DASNY). The project commenced in 2006 and is scheduled for completion this year.
Meanwhile, in a November 2006 report, the Commission of Health Care Facilities in the Twenty-First Century, also known as the Berger Commission, recommended that Cabrini Medical Center be closed (Fargione affidavit, exhibit A). Subsequent to learning about the impending closure of Cabrini Medical Center, the parties engaged in communications regarding whether petitioner should retain its hospital-based status. Ultimately, by letter dated February 29, 2008, respondents informed petitioner that its hospital-based designation would end, but that petitioner could apply for the indirect hospital-based rate to be phased out over a three-year period beginning in the calendar year after the hospital closure (verified petition, exhibit C). Pursuant to the Berger Commission recommendation, Cabrini Medical Center closed on or about March 17, 2008 (verified petition 1f 27; respondents’ mem of law at 5). Thus, given that petitioner’s affiliated hospital closed on March 17, 2008, respondents effectively determined that petitioner’s hospital-based designation would end on January 1, 2009 (assuming they applied for the three-year phase-out period).[1]
Petitioner asserts that while Cabrini Medical Center closed on approximately March 17, 2008, it should still be considered a “hospital-based” facility because its operating costs are determined by reference to a base year for which petitioner had an affiliated hospital (i.e., either 1983 or 2002, when Cabrini Medical Center was still in operation); petitioner further argues that respondents’ attempt to change its designation to a “freestanding” facility prior to a change in petitioner’s base rate status to a year in which the affiliated hospital was actually closed (i.e., 2009 and thereafter) constitutes an impermissible retroactive application of the law. Petitioner further submits that respondents’ determination to change its status from hospital-based to free-standing is arbitrary and capricious since *859 petitioner continues to meet the definition of a hospital-based facility set forth at 10 NYCRR 86-2.10 (a) (13) (i) and because petitioner received CON approval and DASNY financing for its renovation based in part upon future Medicaid reimbursement rates at the hospital-based level. Petitioner also asserts that by determining petitioner to be a “free-standing” facility as of January 1, 2009, respondents’ decision acts as an “improper taking of [petitioner’s] vested property rights in its hospital-based Medicaid reimbursement and amounts to a deprivation of property without due process of law.” Petitioner seeks an annulment of respondents’ determination, as well as an order compelling respondents to continue to designate it a hospital-based facility for purposes of Medicaid reimbursement.
Respondents oppose the petition and argue that the determination of February 29, 2008 was rational and in accordance with the applicable regulation which requires that a facility’s status be changed to “free-standing” as of the date the hospital actually closed as opposed to the facility’s base year for cost calculation. Respondents argue that changing petitioner’s status to “free-standing” as of January 1, 2009 is not a retroactive application of the law, as it only applies to petitioner’s prospective rates of Medicaid reimbursement after that date. Respondents submit that while petitoner’s CON and DASNY approvals may have been based on projected future rates of Medicaid reimbursement that included hospital-based status, these rates were just projections that did not require respondents to approve the projections as actual rates, especially given that at the time Cabrini Medical Center’s closure was unanticipated. Respondents further argue that petitioner’s due process claims lack merit in that petitioner has no property interest in future rate reimbursements.
In reviewing the actions of an administrative agency, courts must assess whether the actions at issue were taken without sound basis in reason and without regard to the facts (Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189 [1994], citing Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). The agency’s determination need only be supported by a rational basis. (Id.) Unless the agency’s determination was arbitrary and capricious, it must be sustained (Matter of Cortlandt Nursing Care Ctr. v Whalen, 46 NY2d 979, 980 [1979]). A challenger of an agency regulation must establish that it is so lacking in reason for its promulgation that it is es *860 sentially arbitrary (New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166 [1991]). Moreover, a commissioner’s interpretation of a regulation is “controlling and will not be disturbed in the absence of weighty reasons” (Matter of Cortlandt Nursing Care Ctr. v Whalen at 980, quoting Matter of Sigety v Ingraham, 29 NY2d 110, 114 [1971]). Courts will defer to an agency’s interpretation of its regulations and determinations where the determination is not irrational or contrary to statute, even if a different conclusion might be reached on the same evidence (Matter of Bronx-Lebanon Special Care Ctr. v DeBuono, 269 AD2d 195, 196 [1st Dept 2000]). Reasonable doubts will be resolved in favor of the administrative determination (id.).
Respondents’ determination that petitioner be considered a “free-standing” nursing home as of January 1, 2009 is supported by a rational basis and is not arbitrary and capricious. Respondents’ decision was in accordance with 10 NYCRR 86-2.34 (a), entitled “Affiliation changes,” which provides in relevant part that:
“hospital-based residential health care facility as defined in section 86-2.10 (a) (13) . . . whose affiliated hospital closes its acute care beds shall notify the department within 30 days of actual complete closure of such beds. Such residential health care facility shall have its affiliation status changed to free-standing effective as of the date of actual complete closure.”
The statute further provides for a “three-year phase in of its free-standing affiliation for reimbursement purposes effective the beginning of the next calendar year following actual complete closure of its acute care beds.” (10 NYCRR 86-2.34 [b].)
Based upon the plain wording of the statute, it is clear that it is intended to apply prospectively as opposed to retroactively. While the statute went into effect on January 1, 1989, approximately 16 years after the establishment of petitioner’s nursing home, it dictates that the changes to a facility’s reimbursement rates occur once the affiliated hospital actually closes and if the facility, as petitioner here, chooses to apply for the three-year phase in, the change is effective for reimbursement purposes at the beginning of the next calendar year following the hospital closure — in this case, as of January 1, 2009. Simply because the statute went into effect after the establishment of petitioner’s facility does not make it retroactive, espe *861 cially since the situation here to which it applies is the 2008 closing of petitioner’s affiliated hospital (see Matter of Bronx-Lebanon Special Care Ctr. v DeBuono, 269 AD2d 195 [1st Dept 2000], lv denied 95 NY2d 752 [2000]).
Petitioner’s argument that the statute is retroactive because it affects the calculation of the indirect component of its Medicaid rate, which is in turn determined by reference to a base year for which petitioner had an affiliated hospital, is without merit. Essentially, petitioner argues that the regulation is retroactive because petitioner’s future reimbursement rates are based upon prior base year costs. However, those base year costs are derived from the higher costs that hospital-based facilities have as a result of their relationship with a hospital (see Rizzo affidavit 1i 6; Fargione affidavit 1i 20). Once a nursing home is no longer affiliated with a hospital, it no longer shares the increased costs which result from such a relationship. While petitioner concedes that the statute would apply to it once its base year changed to a year in which Cabrini Medical Center was actually closed, it notes that this date is as of yet uncertain, but based upon the current law regarding the establishment of 2002 as the most recent base year, petitioner submits that its status as hospital-based cannot be changed until at least 2012 (Rizzo affidavit 1111 5, 7). By extension, petitioner further argues that it should continue to receive the increased rates of reimbursement for indirect costs that go with hospital-based status for at least an additional three years after the actual closure of its affiliated hospital. However, this is precisely the situation that 10 NYCRR 86-2.34 (a) addresses by removing the hospital-based status of facilities which are no longer affiliated with a hospital so that rates may be adjusted accordingly. As petitioner’s affiliation with Cabrini Medical Center admittedly ended on or about March 17, 2008, it is not entitled to continue to seek a higher rate of reimbursement based upon a relationship which no longer exists. That petitioner arguably continues to meet the definition of a hospital-based facility set forth at 10 NYCRR 86-2.10 (a) (13) (i)[2] does not make respondents’ determination that 10 NYCRR 86-2.34 (a) applies to petitioner as a result of its affiliated hospital closure arbitrary and capricious, *862 as the regulation specifically states that it applies to facilities which meet the definition of hospital-based set forth at 10 NYCRR 86-2.10 (a) (13). Respondents cannot be faulted for applying the regulation in accordance with the plain meaning of its language (see Matter of Bronx-Lebanon Special Care Ctr. v DeBuono at 196 [“(w)hile there is some factual support for petitioner’s contention that, pursuant to the criteria set forth in 10 NYCRR 86-2.10 (a) (13) (ii), it is a hospital-based facility, courts will defer to an agency’s interpretation of its regulations and determinations where that interpretation is not irrational or contrary to statute, even if a different conclusion might be reached on the same evidence”]).
Moreover, petitioner’s construction of the regulation is in direct contravention with the plain language contained therein. The regulation makes no reference to base years in changing a facility’s affiliated status; rather, it explicitly states that the affiliated status changes effective as of the date of actual complete closure, or in the case of those facilities who apply for a three-year phase in, effective the beginning of the next calendar year after closure. Petitioner’s construction would eviscerate this explicitly stated intent as to when changes in affiliated status are effective. As such, petitioner’s construction is untenable (see Matter of Trager v Kampe, 287 AD2d 643, 644 [2d Dept 2001] [a regulation cannot be construed so as to render its plain language meaningless]).
Nor does the fact that petitioner received CON approval from the Department of Health, as well as tax-exempt mortgage financing from the DASNY for its renovation project based upon projected rates which included its hospital-based status, require a different result. As an initial matter, the necessary approvals were granted before the closure of Cabrini Medical Center was known. Moreover, the CON and DASNY approvals did not constitute approval of the projected rates contained therein, since projections can change based upon any number of factors and the State cannot be estopped from denying petitioner reimbursement based upon approval of applications which contained those projections (see Matter of Bronx-Lebanon Special Care Ctr. v De-Buono at 195; New York State Health Facilities Assn. v Axelrod, 154 AD2d 10, 14 [3d Dept 1990]). For the same reasons, the fact that respondents determined to change petitioner’s affiliation status after petitioner received construction and financing ap *863 provals based upon projected rates does not make the decision arbitrary and capricious. As noted above, respondents reasonably interpreted the plain language of the regulation to apply to petitioner’s subsequent change in circumstance resulting from the closure of its affiliated hospital.
Lastly, petitioner’s due process and “takings” claims are also without merit. In order to be entitled to such due process and to establish a takings claim, petitioner must demonstrate the existence of a protectable property interest (see American Mfrs. Mut. Ins. Co. v Sullivan, 526 US 40, 59 [1999]; Story v Green, 978 F2d 60, 62-63 [2d Cir 1992]; Huntington Yacht Club v Incorporated Vil. of Huntington, 1 AD3d 480, 481 [2d Dept 2003]). As noted above, respondents’ determination that 10 NYCRR 86-2.34 (a) applied to petitioner’s facility as of January 1, 2009 was a prospective, as opposed to retroactive, application of that regulation and thus applied to petitioner’s future reimbursements. Medicaid providers have no property interest in future reimbursements under New York law (In re NYAHSA Litig., 318 F Supp 2d 30, 41 [ND NY 2004], affd sub nom. New York Assn. of Homes & Servs. for Aging, Inc. v DeBuono, 444 F3d 147 [2d Cir 2006]). Furthermore, “where a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking” (Garelick v Sullivan, 987 F2d 913, 916 [2d Cir 1993]; Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 546 [2006]).
Accordingly, the petition is denied and the proceeding is dismissed.

. Petitioner asserts, and respondents do not dispute, that while it does not believe a change in its affiliation status to “free-standing” as opposed to “hospital-based” is proper at this time, in order to protect its rights, it timely applied for the three-year phase-out period on April 14, 2008 (Krasnausky affidavit 1 23 n 2). Thus, any change to petitioner’s status would be phased in over three years starting January 1, 2009.

. For facilities such as petitioner’s which were already in operation as of January 1, 1983, 10 NYCRR 86-2.10 (a) (13) (i) defines a hospital-based as a facility “considered by the Federal Health Care Financing Administration (HFCÁ) to be hospital-based or hospital-related (as pertaining to cost allocation) and which derive and report costs on the basis of a Medicare cost allocation methodology from an affiliated hospital.” Respondent concedes that *862 petitioner was considered to be a hospital-based facility prior to the closure of Cabrini Medical Center (verified answer U 11).