ALEXANDER HARTMAN, Doing Business as WAYNE NURSING HOME AND HEALTH-RELATED FACILITY, Respondent, v ROBERT P. WHALEN, as Commissioner of Health of the State of New York, et al., Appellants.

Third Department, June 21, 1979

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (W. Alexander Melbardis* and *Jeremiah Jochnowitz* of counsel), for appellants.

*O'Connell & Aronowitz, P. C. (Cornelius D. Murray* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Plaintiff operates a certified nursing home and health-related facility participating in the Medicaid program, a joint Federal-State grant-in-aid program, established pursuant to subchapter 19 of the Federal Social Security Act (US Code, tit 42, § 1396 *et seq.*). The facility was originally certified as a 240-bed health-related accommodation. On October 2, 1975, the home changed its bed mix to a 200-bed health-related and a 40-bed skilled nursing institution. The home again changed its bed mix on January 8, 1977, raising the capacity of its skilled nursing facility to 80 beds and leaving only 171 beds for its health-related facility.

The Medicaid reimbursement rate is determined by multiplying the allowable base year costs of the facility by a trend factor which compensates for inflation (see 10 NYCRR 86-2.10, 86-2.12). Typically, the base year period is the calendar year two years prior to the rate period and the allowable costs are determined by analyzing the cost data submitted to the Commissioner of Health (10 NYCRR 86-2.2). Where the fiscal and statistical data of the facility are not available through no fault of the facility, or in the case of a new facility without cost experience, the commissioner may determine rates based on the so-called "group average" (10 NYCRR 86-2.15).

Claiming inadequate occupancy rates and unrepresentative start-up costs due to changes in the bed mix, plaintiff did not file its occupational cost reports for the years 1975 and 1976.[1] In late 1977, the commissioner threatened to stop all Medicaid reimbursements in 1978 because of the absence of the cost

---

1. Such reports need not be filed where a facility's occupancy rate was less than 90% (10 NYCRR 86-2.2 [e]).

reports. In a letter on December 30, 1977, the Health Department directed plaintiff to file its cost data for the first six months of 1977 so that the commissioner could recompute a new rate, to become effective February 1, 1978, for the balance of 1978, based on this six-month cost data. In the interim a reimbursement rate was adopted which represented the group average figures for comparable facilities less a 2% penalty imposed for failure to file the 1976 cost report (see 10 NYCRR 86-2.2 [c]). Plaintiff filed the cost data for the first half of 1977 on January 12, 1978. However, plaintiff warned that due to a change in bed mix and because of pay increases due its union employees pursuant to a collective bargaining agreement, the 1977 cost figures would not be representative of true costs to be incurred in 1978. Upon review of this cost data, the commissioner discovered that the facility had earned a net operating profit of $250,000 for the first six months of 1977. Therefore, on February 17, 1978, the commissioner advised the plaintiff that its rate of reimbursement would be lowered by approximately $65,000 a month retroactive to the February 1, 1978 date referred to in the letter of December 30, 1977.

Plaintiff determined that under this revised lower rate it could not operate its facility. It, therefore, bypassed any available administrative remedy and initiated a declaratory judgment action on March 3, 1978, requesting, *inter alia,* that the defendants be enjoined, both preliminarily and permanently, from implementing such rate reductions. It is from the grant of a preliminary injunction in favor of plaintiff that this appeal arises.

Prior to oral argument, the parties stipulated that plaintiff would justify continuance of the stay solely on the grounds of exigent circumstances and likelihood of success on the merits, not on subdivision 4 of section 2807 *[set out fourth]* of the Public Health Law. The defendant commissioner argued that the stay should not have been issued because plaintiff had not exhausted its administrative remedies.

█ At the time plaintiff brought this declaratory judgment action, the regulations of the Department of Health provided for administrative review before reimbursement rates could be changed following department audits (see 10 NYCRR 86-2.7 [f], [g]).[2] Accordingly, we conclude not only that Special Term

2. The provision creating the administrative review mechanism was effective January 25, 1977, and included the right to a hearing. Numerous subsequent amendments have altered the procedural steps of the review mechanism, but have not affected plaintiff's right to administrative review under the regulations.

erred in issuing the preliminary injunction, but further, that the action should have been dismissed as premature, despite defendants' failure to seek such relief.

■ However, notwithstanding defendants' protestation to the contrary, the proposed new rates clearly manifest an attempt to recoup overpayments in Medicaid reflected by the excessive profit earned by plaintiff in the first half of 1977. We have held that due to its property right in money sought to be recouped, a nursing home is entitled to a hearing at which it may challenge the department's audit *(Cloves Lake Nursing Home v Whalen,* 45 NY2d 873, 874; *Matter of Bradley v Whalen,* 58 AD2d 664; *Matter of Park Crescent Nursing Home v Whalen,* 55 AD2d 801), and though recoupment may begin prior to a hearing *(Cloves Lake Nursing Home v Whalen, supra),* where recoupment has begun, as here, a hearing must be granted within 10 days *(Park Nursing Home v Whalen,* 65 AD2d 902; *Portnick v Whalen,* 65 AD2d 827). While it is clear that plaintiff should have commenced an article 78 proceeding to compel defendants to hold a hearing (see *Cloves Lake Nursing Home v Whalen, supra;* 10 NYCRR 86-2.7 [f], [g]), this court has the power to grant appropriate relief even where not demanded (CPLR 3017, subd [a]; see *Matter of Birchwood Nursing Home v Whalen,* 70 AD2d 1020 [decided herewith]). Accordingly, the matter is remitted to the Commissioner of Health for the purpose of a hearing within 10 days of the service of this order on the Commissioner of Health.

The order should be reversed, on the law, without costs; the motion should be denied, and the matter should be remitted to the Commissioner of Health for further proceedings not inconsistent herewith.

GREENBLOTT, MAIN, MIKOLL and HERLIHY, JJ., concur.

Order reversed, on the law, without costs; motion denied, and matter remitted to the Commissioner of Health for further proceedings not inconsistent herewith.