In the Matter of BEECHWOOD SANITARIUM, Petitioner, v CESAR PERALES, as Commissioner of Social Services of the State of New York, et al., Respondents.

Third Department, July 12, 1990

APPEARANCES OF COUNSEL

*O'Connell and Aronowitz (Cornelius D. Murray* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for respondents.

## OPINION OF THE COURT

KANE, J.

Petitioner is a residential health care facility located in the

City of Rochester, Monroe County, owned and operated by Herbert and Olive Chambery. As a participant in the Medicaid program, petitioner received reimbursements during the years 1980, 1981 and 1982 according to rates computed by the Department of Health (hereinafter DOH) and based on rates contained in petitioner's cost reports for the 1978, 1979 and 1980 base years. Thereafter, the Department of Social Services (hereinafter DSS), which had since been given responsibility for auditing cost reports (see, Social Services Law § 368-c; *Matter of Fahey v Perales,* 141 AD2d 934), conducted an audit of petitioner's cost reports. In 1986, DSS retroactively reduced petitioner's Medicaid reimbursement for the rate periods 1980 through 1982 due to certain disallowances outlined in its final audit report. After petitioner's requested administrative hearing, respondent Commissioner of Social Services (hereinafter the Commissioner) found, *inter alia,* certain audit disallowances challenged by petitioner to be correct and petitioner's challenge to other disallowances to be outside DSS jurisdiction. This proceeding seeking review of that determination followed.

We turn first to petitioner's challenge to the disallowance by DSS of a portion of the 1978 base year salaries paid to Olive Chambery and her son Brook Chambery, who was employed by petitioner as comptroller during that year. In its draft audit report, DSS held Brook's salary to the $8,500 ceiling applicable to relatives of facility owners or operators and Olive's salary to $2,150, which represented the difference between the $23,425 ceiling applied to individual administrators' salaries (the ceiling that Herbert's salary was held to) and the over-all ceiling for administrators' salaries of $25,575. Upon petitioner's objections to these ceilings, DSS consulted with DOH, which directed that Brook be allowed $19,400* and Olive $10,000. These figures represented the amounts that DOH had allowed in 1976 after petitioner successfully appealed for a ceiling waiver on the basis of existing comparable salaries at market-related levels. Petitioner's contention at the hearing was, *inter alia,* that DSS should have applied an inflation trend factor to the 1976 salaries allowed by DOH to arrive at appropriate 1978 figures (see, 10 NYCRR 86-2.12). The Commissioner determined that the challenge was one aimed at DOH rate-setting methodology and, as such, was outside DSS jurisdiction. In response to petitioner's appeal

---

* Apparently, DSS inadvertently raised this allowance to $19,500.

herein, respondents argue that "[s]ince petitioner did not establish that DSS had failed to correctly apply DOH methodology, the Commissioner reasonably concluded that petitioner's challenge was to DOH's methodology itself".

■ We find otherwise. Although, as the parties agree, the authority of DSS does not extend to challenges to DOH rate-setting methodology (see, 18 NYCRR 517.6 [b] [6]; *Matter of Livingston County Health Related Facility v Perales,* 124 AD2d 289, 291), the challenge here is to the refusal by DSS to *apply* that methodology, i.e., the trend factor called for in DOH regulations, and *not* to the validity of the methodology itself. Moreover, we cannot agree with respondents' position that petitioner was required to show that the trend factor was intended to apply to situations where DOH waives a salary ceiling. According to DOH regulations, the trend factor, which compensates for inflation (see, 10 NYCRR 86-2.12 [a]; *Matter of Wellsville Manor Nursing Home v Axelrod,* 142 AD2d 225, 226, *lv denied* 74 NY2d 602) *"will* be added" to the basic rate allowed in order to project increases during the effective period of the reimbursement rate (10 NYCRR 86-2.12 [a] [emphasis supplied]; *see, Hartman v Whalen,* 68 AD2d 466, 467). It appears from the record that the basic rate allowed in this instance constituted the 1976 salary figures for Brook and Olive that DOH instructed DSS to allow for 1978, and there is nothing to indicate that DOH applied the trend factor prior thereto. Contrary to respondents' argument, the regulation's applicability, in our view, speaks for itself.

■ Turning now to petitioner's challenge to the salary disallowance for the 1980 base year, the record demonstrates that during that year Herbert, not Brook, worked as comptroller for petitioner, while Brook reported salaries as both petitioner's administrator and general maintenance worker. DSS combined Herbert's salary with Olive's, as owners, and again combined those salaries with Brook's, as administrator. DSS then applied the over-all owner/administrator ceiling to the combined salaries and subsequently disallowed an excess of $77,119. Petitioner now argues that because DSS did not combine the salaries for purposes of the 1978 base year audit, it was arbitrary and capricious to do so for 1980. In our view, the record fully supports the discrepancy in treatment in that, during 1978, Brook's salary was not subject to the owner/administrator ceiling because Brook did not work in that

capacity. Additionally, although Herbert did not serve as administrator during the 1980 base year, his salary was still subject to the applicable ceiling as he continued to operate and own the facility. Furthermore, although DSS originally combined Olive's and Herbert's salaries as owners/administrators for base year 1978, DSS allowed amounts above the applicable ceilings in accordance with DOH instructions. Accordingly, we find nothing arbitrary or capricious in the treatment of salaries by DSS for the base year 1980.

■ Petitioner also challenges the DSS disallowance of its reported accrual in 1978 of unused sick leave. The applicable standard entitles a facility to an accrual of sick leave that is earned by its employees, but not used, only in instances where the facility's established policy gives the employee the right to payment in lieu of sick leave not taken. The issue here is whether petitioner had established such a policy for the base year 1978. Although there was testimony from Brook that petitioner had such a policy in place in 1978, it was within the Commissioner's province to reject it (see, Matter of American Diagnostic Labs. v Perales, 137 AD2d 814, 816, lv denied 72 NY2d 804). Furthermore, contrary to petitioner's view of the record, a DSS auditor testified at petitioner's hearing that petitioner's policy of entitling employees to payment for unused sick leave was "not in there [sic] 1978". Accordingly, there is substantial evidence in the record to support the disallowance (see, supra).

■ Finally, we reject petitioner's remaining arguments concerning the operating and depreciation expenses disallowed by DSS for petitioner's automobiles in base years 1978 and 1980. Only that use of petitioner's automobiles which is "properly chargeable to necessary patient care" is allowable (10 NYCRR 86-2.17 [a]), and it is uncontroverted that petitioner failed to provide documentation supporting patient-related use of the vehicles in question. Although DSS may have assumed such usage in allowing a portion of operating costs, such a windfall to petitioner does not mandate reimbursement for corresponding depreciation costs absent the requisite documentation. Accordingly, the unsubstantiated costs for the vehicles was properly disallowed.

MAHONEY, P. J., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Determination modified, without costs, by annulling so much thereof as found the Department of Social Services lacking of jurisdiction to consider petitioner's appeal regarding the disallowance of 1978 salaries; matter remitted to respondents for further proceedings not inconsistent with this court's decision; and, as so modified, confirmed.