■ In the Matter of HIGH POINT HOSPITAL, Petitioner, v RICHARD C. SURLES, as Commissioner of the Office of Mental Health of the State of New York, Respondent. [630 NYS2d 391] —Peters, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which disallowed a portion of petitioner's real estate taxes in calculating its Medicaid reimbursement rate.

Petitioner is a privately owned psychiatric hospital located on 142 acres in the Town of Rye, Westchester County. It is licensed by the Office of Mental Hygiene (hereinafter OMH) pursuant to Mental Hygiene Law article 31. Medicaid reimbursement rates for hospitals licensed by OMH are computed on a per diem basis by dividing allowable costs by allowable patient days (*see*, 14 NYCRR 577.7; *see generally*, 14 NYCRR part 577; 42 CFR 413.9).

OMH performed a review of petitioner's institutional cost reports (*see*, 14 NYCRR part 552) to determine petitioner's Medicaid reimbursement rate for 1992. As a result thereof, OMH disallowed certain costs including $264,295 of the $315,295 in real estate taxes paid by petitioner. OMH notified petitioner of such result, contending that such taxes appeared to be unreasonable compared to other private psychiatric hospitals and that such tentative disallowance would be final unless petitioner could provide "substantiation and documentation to support the reasonableness of the amount". In reply, petitioner contended that the "isolat[ion] [of] one cost center * * * is grossly inequitable [in] the big picture * * * [because petitioner's] per diem rate * * * is the lowest of all free Psychiatric Hospitals". It further alleged that the physical setting is necessary for the emotional well-being of the patients served by petitioner. OMH nevertheless finalized its original assessment of petitioner's 1992 Medicaid reimbursement rate.

After an administrative hearing, the Hearing Officer issued a report which recommended that OMH's disallowance of a portion of petitioner's 1990 real estate taxes in its calculation of petitioner's 1992 reimbursement rate be confirmed. By determination dated June 24, 1994, respondent adopted the Hear-

ing Officer's report and sustained OMH's determination. Petitioner commenced this CPLR article 78 proceeding which was thereafter transferred to this Court.

Our standard of review is limited to whether the determination below is supported by substantial evidence (*see*, CPLR 7803 [4]; *Matter of Block v Ambach*, 73 NY2d 323, 335) and, in such capacity, we will " 'not weigh the evidence or reject the choice made by [such agency] where the evidence is conflicting and room for choice exists' " (*Matter of Berenhaus v Ward*, 70 NY2d 436, 444, quoting *Matter of Stork Rest. v Boland*, 282 NY 256, 267). Reasonable doubts will be resolved in favor of the administrative determination (*see*, *Matter of Town of Henrietta v Department of Envtl. Conservation*, 76 AD2d 215).

In such capacity, we review petitioner's contention that the payment of real estate costs is a reasonable cost which must be reimbursed pursuant to Federal law. Pursuant to the Boren Amendment (*see*, 42 USC § 1396a), a State Medicaid plan must provide for the payment of hospital services through rates which are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (42 USC § 1396a [a] [13] [A]). Reasonable costs are those "actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services" (42 USC § 1395x [v] [1] [A]). The regulations acknowledge that the cost of such services will vary between providers and, provides as follows: "The provision in Medicare for payment of reasonable cost of services is intended to meet the actual costs, however widely they may vary from one institution to another. This is subject to a limitation if a particular institution's costs are found to be substantially out of line with other institutions in the same area that are similar in size, scope of services, utilization, and other relevant factors" (42 CFR 413.9 [c] [2]). Any items or services substantially in excess of those generally considered necessary for the provision of needed health services would not be allowable (*see*, 42 CFR 413.9 [c] [3]).

To the extent that petitioner contends that the instant disallowance violates the Boren Amendment, we find no merit. Petitioner raises an issue with respect to a specific disallowance in its own reimbursement rate and fails to proffer any proof that the overall rates are unreasonable and inadequate to meet the costs which must be incurred or that the State Medicaid plan is otherwise deficient (*see*, *Lett v Magnant*, 965

F2d 251; *see also*, *Portland Residence v Steffen*, 34 F3d 669, 674).*

Indisputably, the State is required to reimburse those costs "which must be incurred by [an] efficiently and economically operated facilit[y]" (42 USC § 1396a [a] [13] [A]) but is not obligated to reimburse costs on the basis of actual, individualized incurred costs (*see*, *New York State Health Facilities Assn. v Axelrod*, 154 AD2d 10, 13; *see also*, *Matter of Sigety v Ingraham*, 29 NY2d 110). Here, petitioner's real estate tax cost per certified bed was $7,007 while the other three Mental Hygiene Law article 31 psychiatric hospitals in the same regional area averaged $1,127 per certified bed. At the hearing, respondent introduced evidence indicating that the State-wide median cost per bed for article 31 psychiatric hospitals for which it had real estate tax information was $1,728, thereby forcing its conclusion that petitioner's real estate tax cost per bed was substantially in excess of other similarly licensed hospitals in the area. Conceding that some portion of petitioner's cost was reasonable and related to the provision of patient care, OMH multiplied the average cost per bed for comparable facilities in the area and thereafter adjusted petitioner's figures to reflect such costs by the number of certified beds. OMH then determined that only $51,000 of petitioner's real estate taxes would be allowable since it had no evidence before it that the tax incurred on the entire 142 acres was "reasonable and * * * relate[d] to [the provision of] patient care" (14 NYCRR 577.4 [a]).

While petitioner contends that OMH failed to compare the size, scope of services or utilization as required by Federal regulation (*see*, 42 CFR 413.9 [c] [2]), we disagree. The record reflects that OMH adequately compared petitioner with facilities in the same regional area, that its size was considered since OMH normalized the difference between such facilities by dividing the real estate costs by the number of certified beds, and that it further considered the scope of services by comparing petitioner only with privately owned psychiatric hospitals licensed under Mental Hygiene Law article 31. Noting the dearth of testimony evidencing OMH's consideration of petitioner's use of the land prior to its assessment, we find that petitioner failed to meaningfully utilize the opportunity presented to document and substantiate the reasonableness of the

---

* We note that the disallowance here cannot be considered a material change in State law (*see*, 42 CFR 430.12 [c]) or a change in methods or standards (*see*, 42 CFR 447.253) which would require the State to make findings and submit assurances that the State plan complies with Federal statutes and regulations.

entire parcel as necessary for patient care. While experts for both petitioner and respondent testified that petitioner's physical setting could have a beneficial effect on psychiatric patients, not one witness could precisely state that the entire 142-acre parcel was necessary for a 45-bed facility or, in the alternative, what smaller portion would suffice.

As to petitioner's claims that the real estate taxes must be fully allowable because the property is exclusively used for the provision of patient care and that its taxes are a fixed cost over which it has no control, we reiterate the Court of Appeals admonishment that "[t]here is nothing in the statute to require a full reimbursement because of petitioner's predilections for a fashionable neighborhood" (*Matter of Sigety v Ingraham*, 29 NY2d 110, 115, *supra*).

Hence, given the substantial evidence in the record, we find that respondent's determination to limit petitioner's allowable costs to the average real estate tax costs per bed for similar facilities was entirely reasonable.

Accordingly, respondent's determination is confirmed in its entirety.

Cardona, P. J., Mercure, White and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.