■ In the Matter of DAUGHTERS OF SARAH NURSING CENTER, INC., Petitioner, v ANTONIA NOVELLO, as Commissioner of Health, et al., Respondents. (And Another Related Proceeding.) [894 NYS2d 541]—

Lahtinen, J.

Petitioner operates a residential health care facility located in

the City of Albany that receives reimbursement of its capital and operating costs through the Medicaid program. In 1983—the base year for setting the operating costs portion of petitioner's Medicaid reimbursement rates—petitioner used an outside service to clean the facility's laundry. According to the Department of Health (hereinafter DOH), the cost for those services was included as part of the indirect component of the operating portion of petitioner's Medicaid reimbursement rate (*see* 10 NYCRR 86-2.10 [d]).[1] In December 1993, after DOH approved an application for a certificate of need (hereinafter CON) (*see* 10 NYCRR 710.1 [c] [5]) allowing petitioner to receive reimbursement for the construction of a laundry addition to its facility, petitioner began renting laundry equipment, purchasing linens and cleaning its laundry in-house. The linen purchases and rental equipment charges were subsequently reported by petitioner as capital costs and petitioner received reimbursement for those costs in the capital component of its rates (*see* 10 NYCRR 86-2.10 [g]).

Thereafter, two separate audits of petitioner's financial records covering the periods from 1991 to 1994 and 1995 to 1998 were conducted in order to project petitioner's Medicaid reimbursement rates for the 1993 to 1996 and 1997 to 2000 rate periods, respectively. As relevant herein, the auditors disallowed capital costs for the purchased linens and the rental of laundry equipment. The auditors found that, because the operating portion of the reimbursement rates for the audited years continued to reflect the laundry expenses for the outside contractor as

---

1. At all times relevant to this proceeding, Medicaid reimbursement rates—the per diem or daily rate at which a facility can bill Medicaid for each Medicaid-eligible resident—were based on "four separate and distinct components," specifically, the direct, indirect, noncomparable and capital components (10 NYCRR 86-2.10 [b] [1] [ii] [a]-[d]; *see* Public Health Law former §§ 2807, 2808). DOH sets the rates in advance of the rate period to which the rates apply and those rates reimburse the facility for both capital and operating costs. Notably, the operating portion of a facility's rate is comprised "of the sum of the direct, indirect and noncomparable components of the rate" (10 NYCRR 86-2.10 [b] [2]; *see* 10 NYCRR 86-2.10 [a] [7]). In calculating the operating portion of the rate, a facility's expenses in its base year—which is 1983 for the audit periods at issue—are adjusted and used in estimating the facility's allowable expenses in subsequent years (*see* 10 NYCRR 86-2.10 [b] [1] [i]). The indirect component of the rate is subject to maximum (ceiling) and minimum (base) amounts derived from statewide averages (*see* 10 NYCRR 86-2.10 [d] [4]). In contrast, the capital component of the rate for voluntary facilities, such as petitioner, are reimbursed differently, based upon interest and depreciation (*see* 10 NYCRR 86-2.19, 86-2.20; *see also* 10 NYCRR 86-2.10 [g]). Such amounts are not subject to a ceiling and, unlike operating costs, are generally reimbursed for actual expenses reported two years prior to the rate year (*see* 10 NYCRR 86-2.10 [g]; 86-2.19).

indirect costs even after petitioner halted those services and began doing its own laundry, petitioner received duplicative reimbursements. Petitioner appealed each audit to DOH's Bureau of Adjudication and, after hearings, the disallowances were upheld. Petitioner commenced these proceedings claiming, among other things, that it did not receive duplicative reimbursements and, therefore, the determinations upholding the challenged disallowances should be annulled. Supreme Court transferred both proceedings to this Court where they have been joined for our review.

Significantly, in these proceedings, this Court's review is limited to whether the determinations of respondent Commissioner of Health are supported by substantial evidence (see CPLR 7803 [4]; Matter of High Point Hosp. v Surles, 218 AD2d 874, 875 [1995]). This Court cannot weigh the evidence, and reasonable doubts should be resolved in favor of administrative determinations (see Matter of High Point Hosp. v Surles, 218 AD2d at 875; see also Matter of Berenhaus v Ward, 70 NY2d 436, 444 [1987]). Furthermore, the Commissioner's interpretation of the applicable regulations is entitled to deference unless that interpretation is found to be irrational (see Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 280 [2003]). Upon review of the record and relevant regulations before us, we conclude, for the reasons that follow, that both determinations must be confirmed.

At the outset we note that, according to DOH witnesses' testimonies, DOH's policy has consistently been that, except in limited circumstances not applicable herein (see 10 NYCRR 86-2.10 [b] [3]), the 1983 base year for setting the operating cost portion of the reimbursement rates is not subject to modification. Nothing in the record before us establishes that this position is not entitled to deference (see Matter of Queens-Nassau Nursing Home v McBarnette, 216 AD2d 715, 716 [1995], lv denied 87 NY2d 804 [1995]). Thus, petitioner's base-year operating expenses, as adjusted for inflation and other factors, became fixed in 1983 prior to its implementation of an in-house laundry system and were not subject to adjustment. Accordingly, in each proceeding, the audit determinations were based on the premise that, while challenged items—such as the cost of rental equipment—would normally be capitalized as reported by petitioner, it could not be done in these cases because the indirect component of petitioner's 1983 base-year operational cost reimbursement rates already reimbursed petitioner for laundry services.

Petitioner, nonetheless, argues that there is no duplication of

reimbursement herein because, under the applicable regulations, capital costs of this nature are generally deducted from the indirect component of the operating portion of the reimbursement rate (*see* 10 NYCRR 86-2.10 [d] [1] [vi]) and are separately reimbursed through the capital component. However, under DOH's interpretation, petitioner's purchase price of laundry services from an outside provider in 1983 included the capital costs incurred by that company for items such as the cost of laundry equipment. According to DOH, the capital costs of the outside laundry service could not be carved out of the operating portion of petitioner's rate and, therefore, no deduction of capital costs from the indirect component was considered feasible. Thus, through DOH's calculations, petitioner received reimbursement for the outside laundry's capital costs and, accordingly, it is not irrational to conclude that further reimbursement to petitioner of its in-house laundry capital costs through the capital component of its rates would result in a duplicative reimbursement.

Next, petitioner argues that it never received full reimbursement in the first place for its outsider-provided laundry expenses in the 1983 base-year period because its rates were capped by the reimbursement ceiling (*see* 10 NYCRR 86-2.10 [d] [4]). However, the ceiling did not specifically limit petitioner's reimbursement for laundry expenses directly, but rather limited all indirect operating costs collectively (*see* 10 NYCRR 86-2.10 [d]); therefore, it is not possible to precisely determine the extent to which particular expenses were reimbursed. In any event, even accepting that petitioner did not receive reimbursement for all of its outside provider laundry expenses because of that ceiling, the record indicates that all of petitioner's costs for the laundry services it previously purchased from outside of the facility were included in the indirect component of the rate and petitioner received reimbursement for the maximum rate allowance.

Similarly unavailing is petitioner's argument that DOH's approval of its CON for the laundry addition to its facility in 1993 establishes DOH's knowledge of its change in providing laundry services and prevents DOH from subsequently disallowing its in-house laundry-related capital costs. Contrary to petitioner's argument, the CON decision standing alone did not constitute approval of future rate projections reflecting the change in service nor did it estop the disallowance of the capital costs at issue herein (*see Matter of Hamptons Hosp. & Med. Ctr. v Moore*, 52 NY2d 88, 93-94 [1981]; *New York State Health Facilities Assn. v Axelrod*, 154 AD2d 10, 14 [1990]; *see also Matter of*

*Bronx-Lebanon Special Care Ctr. v DeBuono,* 269 AD2d 195, 195 [2000]). Petitioner further contends that the rate setters must have approved the reimbursement of in-house laundry capital costs during the audited periods with full knowledge that the indirect component of the rate also included the costs of outside laundry services and, therefore, the later disallowances of these amounts was improper. However, in light of the testimony that DOH rate setters had no reason to look into the particulars of petitioner's 1983 base-year operating expenses to find out whether they included costs for outside laundry services, that argument is neither persuasive nor dispositive.[2]

In sum, given that the Commissioner's interpretation of the interplay between DOH's policies and its regulations set forth in the record was neither irrational nor unreasonable (*see Matter of Nazareth Home of the Franciscan Sisters v Novello,* 7 NY3d 538, 544 [2006]; *Matter of GMR Living Ctrs. v Novello,* 294 AD2d 851, 851 [2002]; *Matter of Bronx-Lebanon Special Care Ctr. v DeBuono,* 269 AD2d at 196; *Matter of Queens-Nassau Nursing Home v Barnette,* 216 AD2d at 716), and the disallowances of petitioner's capital costs as duplicative is supported by substantial evidence (*see Matter of High Point Hosp. v Surles,* 218 AD2d at 875), we find no basis to disturb the determinations.

The remaining issues raised by petitioner and not expressly addressed herein have been examined and found to be unpersuasive.

Cardona, P.J., Mercure and Spain, JJ., concur; Kane, J., not taking part. Adjudged that the determinations are confirmed, without costs, and petitions dismissed.

2. In fact, one DOH rate setter specifically testified that had he been aware that the 1983 cost of the outside laundry service was included in the indirect component of the operating portion of petitioner's rate, he would not have included any in-house laundry costs in the capital components of the applicable rates.