In the Matter of ODD FELLOW & REBEKAH REHABILITA-
TION AND HEALTH CARE CENTER, INC., Petitioner, v COMMIS-
SIONER OF HEALTH OF THE STATE OF NEW YORK et al., Respon-
dents. [966 NYS2d 587]—

Stein, J.P. Proceeding pursuant to CPLR article 78 (trans-
ferred to this Court by order of the Supreme Court, entered in
Albany County) to review a determination of respondent Com-
missioner of Health which disallowed Medicaid reimbursement
for certain of petitioner's expenses.

Petitioner, a 126-bed residential health care facility located in
Niagara County, participates in the Medicaid reimbursement
program. Following a major renovation to its facility completed
in March 2000, petitioner compiled a cost report for the period
between April 1, 2000 and March 31, 2001 to serve as the basis
for future Medicaid reimbursements. In 2004, the Department
of Health's Office of the Medicaid Inspector General commenced
an audit of petitioner which culminated in a September 2009
final report that disallowed certain operating costs used to
compute petitioner's base Medicaid reimbursement rates,* as
well as certain capital costs. As a result, petitioner was found to
have received substantial overpayments from Medicaid for the
period, as relevant here, between April 1, 2000 and December
31, 2005. Following an administrative hearing, the Department
affirmed the disallowances, prompting petitioner to commence
this CPLR article 78 proceeding, and we now confirm.

Preliminarily, we note that petitioner bears the burden of
demonstrating that the determination of the Department was

---

* Medicaid reimbursement rates are the daily rate that a facility can bill
Medicaid for its eligible residents, and the applicable rate is determined by
adjusting the facility's base year costs and trending them forward to establish
its costs prospectively (see Matter of Nazareth Home of the Franciscan Sisters
v Novello, 7 NY3d 538, 543 [2006]; Matter of Daughters of Sarah Nursing Ctr.,
Inc. v Novello, 69 AD3d 1150, 1151 n 1 [2010], lv denied 15 NY3d 704 [2010];
see generally 10 NYCRR 86-2.10).

erroneous and that all costs claimed were allowable (*see* 18 NYCRR 519.18 [d] [1]; *Matter of Teresian House Nursing Home Co., Inc. v Commissioner of Health of State of N.Y.*, 70 AD3d 1294, 1296 [2010]; *Matter of GMR Living Ctrs. v Novello*, 294 AD2d 851, 852 [2002]). In that regard, an agency's interpretation of the applicable regulations will be given deference unless irrational, and its determination will be upheld if supported by substantial evidence (*see Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 280 [2003]; *Matter of Daughters of Sarah Nursing Ctr., Inc. v Novello*, 69 AD3d 1150, 1152 [2010], *lv denied* 15 NY3d 704 [2010]).

Turning to the merits, we first address petitioner's challenge to the Department's determination to reclassify the salary and benefit costs of certain employees. As to the unit assistants, the Department reclassified them from the activities cost center, as reported by petitioner, to the skilled nursing cost center. Pursuant to the applicable regulations, expenses should be reported on a functional basis, regardless of the organizational structure of the specific facility (*see* 10 NYCRR 454.2 [b] [1]). The description of the skilled nursing cost center includes expenses associated with direct patient care, such as serving food in their rooms, feeding, assisting with daily hygiene, answering calls, stripping and making beds and keeping rooms in order (*see* 10 NYCRR 455.37). Comparatively, the activities cost center focuses on expenses associated with coordinating, scheduling and supervising recreational and leisure-time facilities, activities and services for residents (*see* 10 NYCRR 455.14).

Here, petitioner's job description for the position of unit assistant included, among other things, feeding residents, cleaning bedpans and urinals, answering resident call lights, changing beds, disposing of linens and performing routine functions related to the personal comfort and care of residents, and those duties were confirmed by Joann Getman, petitioner's Director of Nursing. The only mention of activities in the unit assistant job description was the responsibility to transfer residents to and from activities. Moreover, Colleen Lofft, petitioner's Director of Finance, testified that unit assistants were classified under the activities cost center at the recommendation of an outside accounting firm and that no review of the job description was undertaken before doing so. Accordingly, the Department's reclassification of unit assistants to the skilled nursing cost center was supported by substantial evidence (*see Matter of Elderwood Health Care Ctr. at Linwood v Novello*, 59 AD3d 932, 933 [2009]).

Petitioner next challenges the Department's reclassification

of a portion of the compensation paid to the minimum data set coordinator and the admissions coordinators from the utilization review cost center to the nursing administration and social service cost centers, respectively. We agree with the Department that petitioner failed to provide the proper documentation to support its initial reclassification. Pursuant to 10 NYCRR 454.2 (c), where an employee is performing activities related to more than one function, a time study must be made to determine the necessity for a reclassification of salary costs. Here, petitioner presented no such study. Rather, Lofft testified that petitioner's reclassification of these positions was based upon conversations she had with the employees who held them and the advice of petitioner's accounting and auditing consultants. Therefore, the Department's determination to revert to petitioner's original classification of these positions was proper. In any event, a review of the descriptions of the relevant cost centers supports the Department's further conclusion that petitioner's reclassifications were not justified.

Next, we find that the Department's disallowance of certain electricity expenses from petitioner's calculations for the base period was supported by substantial evidence. Although there is no dispute that petitioner paid the subject expenses and the cost of electricity is a reimbursable expense (*see* 10 NYCRR 86-2.10 [f] [2] [xiv]), the Department disallowed a portion of the claimed expenses because they were incurred for services provided outside of the base period, i.e., for service between October 27, 1999 and March 28, 2000. We are unpersuaded by petitioner's argument that the costs were properly allocated in accordance with generally accepted accounting principles, when the bill was received—as opposed to when the services were rendered—inasmuch as the purpose of the requirement of using the accrual method of accounting is to base the Medicaid reimbursement rate for a 10-year period upon the actual operating costs for a single base year (*see* 10 NYCRR 86-2.4, 451.8, 451.65, 452.3 [a]; Centers for Medicare and Medicaid Services, Provider Reimbursement Manual, part 1, § 2302.1).

Likewise, substantial evidence supports the Department's determination to exclude certain laboratory and X-ray costs in establishing petitioner's reimbursement rate. Inasmuch as the costs at issue were reimbursed through Medicare Part A—as conceded by petitioner's counsel during the hearing—reimbursement therefor was not available from Medicaid, as the payor of last resort (*see Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499, 503 [2005]; *Matter of Rego Park Nursing Home v Perales*, 206 AD2d 781, 783

[1994]; *see also* 18 NYCRR 540.6 [e] [6]). Moreover, evidence showed that petitioner did not provide laboratory and X-ray services to Medicaid patients at the facility and, thus, any services provided by third-party providers that were the responsibility of Medicaid would have been billed by the providers and reimbursed separately on a fee-for-service basis under the patient's individual Medicaid number. Because petitioner failed to provide evidence that it incurred any costs for laboratory or X-ray services for Medicaid patients or that it was not fully compensated for such costs by Medicare, those costs were properly disallowed for inclusion in the calculation of petitioner's daily rate.

Petitioner next challenges the disallowance of $2,719 in uniform expenses, representing the difference between the amount it expended to purchase uniforms in bulk and the amount it received from the employees who purchased them from petitioner. The Department disallowed this expense, asserting that it was related to uniforms held in inventory for future sales, and petitioner failed to proffer any evidence to refute such contention. Accordingly, substantial evidence supports the Department's determination that this expense was not necessary for petitioner's day-to-day operation and, therefore, should not be included (*see* 10 NYCRR 451.23; *Matter of Teresian House Nursing Home Co., Inc. v Commissioner of Health of State of N.Y.*, 70 AD3d at 1296).

Finally, we reject petitioner's challenge to the disallowance of certain interest expenses paid on working capital loans from its funded depreciation account. While such interest is an allowable expense, the existence of the loan must be substantiated by a signed copy of a loan contract or correspondence that contains the pertinent terms thereof (*see* Centers for Medicare and Medicaid Services, Provider Reimbursement Manual, part 1, §§ 202.1, 226.1; *see also* 10 NYCRR 86-2.17 [a]). Here, petitioner failed to provide the necessary documentation. Moreover, petitioner presented no evidence that specific authorization from the Board of Directors for any such loans was on file, as required by the regulations (*see* Centers for Medicare and Medicaid Services, Provider Reimbursement Manual, part 1, § 202.1). Accordingly, substantial evidence supports the Department's disallowance of this expense.

We have examined petitioner's remaining contentions and have found them to be without merit.

Spain, Garry and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.