Matter of Atlanticare Mgt., LLC v Ives (2022 NY Slip Op 07483)

Matter of Atlanticare Mgt., LLC v Ives

2022 NY Slip Op 07483

Decided on December 29, 2022

Appellate Division, Third Department

McShan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 29, 2022

533327

[*1]In the Matter of Atlanticare Management, LLC, Doing Business as Putnam Ridge, Petitioner,
v
Erin Ives, as Acting Medicaid Inspector General, et al., Respondents.

Calendar Date:September 14, 2022

Before: Garry, P.J., Lynch, Aarons, Pritzker and McShan, JJ.

O'Connell and Aronowitz, Albany (Cornelius D. Murray of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondents.

McShan, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Health disallowing petitioner's claims for certain Medicaid reimbursements.
Petitioner is the owner and operator of Putnam Ridge, a residential health care facility in Putnam County that provides adult residential care and adult day health care services and receives reimbursement of its capital and operating costs through the Medicaid program. The facility was built in 2000 and leased to the previous operator by its former landlord, who owned the property and the facility subject to a 30-year mortgage approved by the Department of Health (hereinafter DOH) with a fixed interest rate of 7.675% and a principal balance of $20,470,600 (hereinafter the original mortgage). The mortgage originated in May 1999 and was set to mature in September 2030.[FN1]
In 2010, petitioner purchased the adult residential care and adult home day health care operations, but not the property and facility itself, which petitioner continued to rent from the former landlord. In December 2012, petitioner purchased the land, facility and its fixtures from the former landlord using a $21,500,000 five-year commercial loan with an effective interest rate of 6.25% (hereinafter the 2012 loan). Rather than make monthly amortization payments on the 2012 loan, petitioner made payments to a sinking fund from January 2013 through June 2014. In June 2014, petitioner refinanced the 2012 loan with a $24,800,000 30-year mortgage with a 3.68% fixed interest rate and a maturity date in 2044 (hereinafter the 2014 mortgage). Further, the funds previously paid to the sinking fund were transferred to petitioner's operating account and applied to the principal balance on the 2014 mortgage as part of the closing costs. Petitioner did not inform DOH about, nor seek its approval for, the 2012 loan or the 2014 mortgage (hereinafter collectively referred to as the refinancing arrangements).
In its 2012 cost report, petitioner first reported the December 2012 loan in its capital cost financing schedule, demarcating it as the "[o]riginal [a]pproved [f]inancing." Subsequently, in its 2013 cost report, petitioner again reported the 2012 loan and this time identified it as an approved refinancing for the facility.[FN2] Accordingly, in calculating the capital component for petitioner's 2015 Medicaid rates based on the 2013 cost report (see generally Public Health Law § 2808
(2-b) (i) (B) (iv); 10 NYCRR 86-2.10 [g]), DOH limited petitioner's reimbursement to interest payments made on the 2012 loan.[FN3] In 2015, DOH undertook a review of petitioner's 2014 cost report as part of its rate-setting determination for petitioner's 2016 Medicaid rate. During its review, DOH became aware of the 2014 mortgage and, consequently, determined that because it had not approved said mortgage, petitioner could not seek reimbursement for mortgage-related expenses [*2]for the 2016 rate period. Upon petitioner's request, DOH reviewed the terms of the 2014 mortgage and, in April 2017, following extensive discussions with petitioner, declined to approve it, citing, among other reasons, the mortgage's high principal relative to the original mortgage along with its 2044 maturity date — 14 years past the original mortgage's 2030 maturity date and four years beyond the end of the subject facility's regulatory 40-year useful life (see 10 NYCRR 86-2.21 [a] [7]).[FN4] Accordingly, DOH converted petitioner's reimbursement methodology by disallowing its mortgage-related expenses and correspondingly increasing its return of equity reimbursement for the 2016 and 2017 rate periods (see 10 NYCRR 86-2.21 [a] [4]; [e] [4]).[FN5]
Meanwhile, in March 2017, the Office of Medicaid Inspector General (hereinafter OMIG), an independent office within DOH, advised petitioner that it would be conducting an audit of petitioner's Medicaid rates from January 1, 2012 through December 31, 2016 limited to the capital component (see 18 NYCRR 517.3; see also 10 NYCRR 86-2.10 [a] [9]). In October 2018, OMIG issued a draft audit report (hereinafter the DAR) which, in pertinent part, disallowed reimbursement for all mortgage-related expenses between 2013 and 2015. OMIG explained that, because it had determined that the refinancing arrangements were not recognized by DOH, petitioner no longer had a recognized mortgage as of January 1, 2013. OMIG therefore recalculated the subject facility's capital cost component for 2013 through 2015 to reimburse petitioner for return of equity and determined that petitioner had received an overpayment. Additionally, OMIG disallowed reimbursement of petitioner's cable television service, concluding that such expenses were part of the operating portion of the rate and could not be reimbursed as part of petitioner's capital expenses.
In November 2018, petitioner sent a letter to OMIG objecting to the DAR, limited to OMIG's adjustments to the subject facility's mortgage expense and return of equity adjustments and the disallowance of cable television equipment rental expenses. As to the mortgage expenses, the DAR noted that both the 2012 and 2014 refinancing arrangements had not been recognized by DOH and, because "the provider no longer had a recognized mortgage as of January 1, 2013, the mortgage expenses included in the 2013 through 2015 rates were disallowed." As to the cable television rental expenses, the DAR stated that those expenses "are operating in nature, and therefore they are not allowed in property costs." In December 2018, OMIG issued a final audit report (hereinafter the FAR) denying petitioner's objections directed at these reimbursement disallowances based upon the same justifications.
Petitioner thereafter requested an administrative hearing to challenge the FAR (see 18 NYCRR 517.6 [b] [4]; see also 18 NYCRR 519.4). Following a five-day administrative hearing, the Administrative Law Judge (hereinafter [*3]ALJ) issued a decision upholding OMIG's disallowances. The ALJ concluded, among other things, that DOH's determination to not recognize the refinancing arrangements relied upon by petitioner would more properly be raised as the subject of a rate appeal, and that OMIG was otherwise justified in disallowing mortgage-related costs for the relevant audit period. The ALJ also determined that OMIG properly disallowed the mortgage and cable television expenses and affirmed OMIG's findings. Petitioner then commenced this CPLR article 78 proceeding seeking to annul the challenged disallowances.[FN6] Following joinder of issue, the proceeding was transferred to this Court pursuant to CPLR 7804 (g).
Petitioner contends that the actions of OMIG and DOH were arbitrary and capricious and that substantial evidence did not support the ALJ's determination to uphold the results of OMIG's audit. In the context of the audit, petitioner was required to demonstrate that OMIG's determination "was erroneous and that all costs claimed were allowable" (Matter of Odd Fellow & Rebekah Rehabilitation & Health Care Ctr., Inc. v Commissioner of Health of the State of N.Y., 107 AD3d 1095, 1095-1096 [3d Dept 2013]; see 18 NYCRR 519.18 [d] [1]; Matter of Gignac v Paterson, 70 AD3d 1310, 1312 [4th Dept 2010], lv denied 14 NY3d 714 [2010]). Our review of that determination requires deference to OMIG's interpretation of DOH regulations unless they are irrational, "and its determination will be upheld if supported by substantial evidence" (Matter of Odd Fellow & Rebekah Rehabilitation & Health Care Ctr., Inc. v Commissioner of Health of the State of N.Y., 107 AD3d at 1096; see Matter of German Masonic Home Corp. v Commissioner of Health of State of N.Y., 109 AD3d 917, 918 [2d Dept 2013]). A determination supported by substantial evidence "must be sustained, irrespective of whether a similar quantum of evidence is available to support other varying conclusions" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018] [internal quotation marks and citation omitted]; see Matter of Alexander M. v Cleary, 205 AD3d 1073, 1075 [3d Dept 2022]). "This Court cannot weigh the evidence, and reasonable doubts should be resolved in favor of administrative determinations" (Matter of Daughters of Sarah Nursing Ctr., Inc. v Novello, 69 AD3d 1150, 1152 [3d Dept 2010] [citations omitted], lv denied 15 NY3d 704 [2010]).
We turn first to petitioner's challenge to DOH's refusal to recognize the refinancing arrangements. Throughout the audit hearing, the parties intermittently raised arguments pertaining to the proper administrative review process for assessing the propriety of DOH's determination to withhold recognition of the refinancing arrangements. For instance, during the hearing, the OMIG officials who participated in the audit insisted that they were constrained to utilize the rate methodology chosen by DOH that would be applicable to the audited rate periods. Indeed, OMIG's primary [*4]contention in its posthearing submission was that petitioner was improperly seeking to challenge DOH's methodology determination as part of OMIG's audit. The ALJ ultimately determined that petitioner was required to raise its contentions regarding recognition of the refinancing arrangements as part of a rate appeal (see 10 NYCRR 86-2.13; 86-2.14) and, on this appeal, respondents agree with that conclusion and argue that petitioner has abandoned any challenge to that aspect of the decision.
During the hearing and in response to our inquiry at oral argument, petitioner maintained that its challenge pertains to OMIG's application of the methodology rather than the methodology itself. However, this distinction fails, as "[r]ates and the methodologies by which they are reached are inextricably intertwined," insofar as "[a] methodology is simply the route by which the rate is reached, and where the methodology is established the rate amount necessarily follows" (Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health, 84 NY2d 252, 261 n 5 [1994]; see Matter of Mount Sinai Med. Ctr. v Empire Blue Cross & Blue Shield, 282 AD2d 965, 966-967 [3d Dept 2001], lv denied 96 NY2d 719 [2001]). In this respect, weaved into its various arguments concerning OMIG's audit, petitioner, in essence, asks that we determine whether DOH properly adjusted its rate reimbursement methodology to increase its return of equity and disallow mortgage-related costs. Said differently, petitioner's contentions necessarily implicate DOH's interpretation and application of if its own rate-setting regulations contained in 10 NYCRR subpart 86-2, which, fundamentally, implicate the rate methodology itself (see Matter of United Helpers Canton Nursing Home, Inc. v Zucker, 145 AD3d 1413, 1414 [3d Dept 2016]; Matter of Ralex Servs., Inc. v Shah, 145 AD3d 1013, 1014 [2d Dept 2016], lv denied 29 NY3d 906 [2017]; Matter of Amsterdam Nursing Home Corp. [1992] v Daines, 68 AD3d 1591, 1592 [3d Dept 2009]; Matter of St. Ann's Home for the Aged v Daines, 67 AD3d 1326, 1327 [4th Dept 2009], lv denied 14 NY3d 710 [2010]).
While petitioner suggests that DOH and OMIG "jointly determined" the methodology imposed, that contention misses the mark, as the audit process precipitating this appeal concerns the actions of OMIG, an independent office within DOH charged with "implement[ing] the DOH rules and regulations intended to recover unjustified Medicaid payments" (West Midtown Mgt. Group, Inc. v State of N.Y., Dept. of Health, Off. of the Medicaid Inspector Gen., 31 NY3d 533, 536 [2018]; see Public Health Law §§ 30, 31 [1], [2]; 32 [20]; see generally 18 NYCRR 517.1). It is DOH that is charged with setting the rates for those facilities participating in the Medicaid program (see Public Health Law §§ 2807, 2808; 10 NYCRR 86-2.2 [a]; 86-2.10), and OMIG's ensuing obligation is to audit a facility's rates "to determine whether the costs reported were accurate and, if the audit [*5]uncovers discrepancies, [to] adjust the rates to account for any inaccuracies" (Matter of North Gate Health Care Facility, LLC v Zucker, 174 AD3d 1201, 1201 [3d Dept 2019], lv denied 35 NY3d 903 [2020]; see Public Health Law § 2808; see also Matter of Blossom View Nursing Home v Novello, 4 NY3d 581, 584 [2005]). In this regard, the regulations governing those audits clearly state that a facility may not raise contentions challenging DOH's rate-setting methodology in the context of such audits (see 18 NYCRR 517.6 [b] [5]; 519.18 [a]; Matter of New Franklin Ctr. for Rehabilitation & Nursing v Novello, 64 AD3d 1132, 1134-1135 [3d Dept 2009], lvs denied 13 NY3d 715, 13 NY3d 716 [2010]; see also Matter of Sylcox Nursing Home & Health Related Facility v Axelrod, 184 AD2d 986, 987 [3d Dept 1992], lv denied 80 NY2d 761 [1992]).[FN7]
As to the 2014 mortgage, our review of the record reveals that DOH made a rate-setting determination for the 2016 rate period predicated on its review of the 2014 cost report and its discovery of the 2014 mortgage. Based upon its determination to not recognize the 2014 mortgage, DOH adjusted petitioner's reimbursement methodology by declining any reimbursement for mortgage-related costs for that financing arrangement and correspondingly increasing petitioner's return of equity reimbursement (see generally 10 NYCRR 86-2.21 [e]). Notably, petitioner's petition does not challenge DOH's 2016 rate-setting determination; rather, it is limited to a review of the ALJ's determination concerning the results of OMIG's audit (cf. Matter of Cedar Manor Nursing Home v Novello, 63 AD3d 833, 834 [2d Dept 2009]). Therefore, the question before us is whether OMIG's determination to disallow expenses related to the refinancing arrangements was proper.
To that end, we note that OMIG justified its disallowances pertaining to the 2014 mortgage in part on DOH's determinations to not recognize that financing and to set the methodology accordingly. We conclude that OMIG's reliance on a DOH rate-setting action was not irrational, and that its audit adjustments to the 2014 and 2015 rate periods in conformance with DOH's methodology determination for the 2016 rate period were proper (see 18 NYCRR 517.6 [b] [5]; 519.18 [a]; Matter of Sylcox Nursing Home & Health Related Facility v Axelrod, 184 AD2d at 988; compare Matter of Beechwood Sanitarium v Perales, 159 AD2d 35, 38 [3d Dept 1990]). Accordingly, petitioner's attempt to challenge this particular aspect of OMIG's audit adjustments must fail, as it is directed primarily at the methodology employed by DOH in calculating petitioner's rates (see Matter of United Helpers Canton Nursing Home, Inc. v Zucker, 145 AD3d at 1414; Matter of New Franklin Ctr. for Rehabilitation & Nursing v Novello, 64 AD3d at 1134; see also 18 NYCRR 519.18 [a]).
Turning to OMIG's determination to disallow capital cost reimbursement for the period when the 2012 loan was the effective financing arrangement, we note that, contrary to [*6]the testimony of OMIG's officials, there was no corresponding DOH methodology determination that OMIG could have relied on to adjust petitioner's rates for the period that the 2012 loan was in effect. To this end, in setting the 2015 rates, the methodology applied by DOH allowed for reimbursement on the 2012 loan but limited such reimbursement to the reported interest payments.[FN8] We note, however, that the record reveals that petitioner identified the 2012 loan in its 2012 and 2013 cost reports as an approved financing arrangement, first in 2012 as an original approved financing and subsequently in 2013 as an approved refinancing. To this end, the record also reveals that DOH was unaware that a new financing arrangement was in place until it discovered the 2014 mortgage while setting rates for 2016. This is evidenced by emails between DOH and petitioner's accountant, which advised petitioner that it would have to submit a "refinancing appeal that [would] allow [DOH] to adjust prior years' capital components to reflect the proper mortgage going back to 2013." While petitioner now contends that DOH pre-approval was unnecessary and that such approval can be obtained after that arrangement is in place, we need not weigh in on that contention, as the record is devoid of any evidence that petitioner sought approval from DOH for the 2012 financing arrangement at any point before or after it became effective, beyond its arguments raised during the administrative hearing following the audit. Accordingly, OMIG's justification in the DAR and FAR for disallowing the mortgage-related costs during the period in which the 2012 loan was the effective financing arrangement based upon a lack of DOH approval for that arrangement is supported by substantial evidence (see Matter of Fast Help Ambulette, Inc. v New York State Dept. of Health, 198 AD3d 756, 759 [2d Dept 2021]; Matter of Gignac v Paterson, 70 AD3d at 1311-1312). Moreover, the conversion to return of equity for this period was not irrational in light of DOH's corresponding determination to utilize that methodology when no Commissioner-approved financing arrangement was in place (see Matter of Elderwood at Cheektowaga v Zucker, 188 AD3d 1578, 1579-1580 [4th Dept 2020]; Matter of SCO Family of Servs. v New York State Dept. of Health, 149 AD3d 753, 755 [2d Dept 2017]; Matter of Cedar Manor Nursing Home v Novello, 63 AD3d at 834; see also 10 NYCRR 86-2.21 [a] [1] [iii]; [e] [4]; see generally Matter of Shore Winds, LLC v Zucker, 179 AD3d 1208, 1211 [3d Dept 2020], lv denied 35 NY3d 914 [2020]).
To the extent that petitioner contends that OMIG should have reimbursed its capital costs despite the lack of DOH approval of the refinancing arrangements, we find its arguments are without merit. Petitioner looks to 10 NYCRR 86-2.21 (e) (5), which provides limitations on reimbursement "which may be waived" in the event that a facility "applies to the [C]ommissioner for approval to refinance an existing mortgage because [*7]its recognized amortization expense exceeds the amount of allowable reimbursement for amortization of principal and interest expense" (10 NYCRR 86-2.21 [e] [5] [ii]). As we have already noted, the roles of OMIG and DOH are distinct (see Public Health Law § 31 [1], [2]). To this end, petitioner's attempt to raise contentions pertaining to DOH's determinations, or lack thereof, are improper in the context of this audit. Petitioner's remaining contention that reimbursement would be authorized pursuant to 10 NYCRR 86-2.21 (h) also fails, as the issue in this proceeding concerned whether petitioner was entitled to capital cost reimbursement pursuant to 10 NYCRR 86-2.21 owing to its failure to gain approval of the refinancing arrangements as opposed to petitioner's failure to submit the necessary information for reimbursement under the regulation. Altogether, we find that OMIG's audit disallowances specific to the capital cost component of petitioner's rates for the audited years were not irrational and were supported by the record (see Matter of Clearview Ctr., Inc. v New York State Off. of the Medicaid Inspector Gen., 172 AD3d 1582, 1586 [3d Dept 2019]; Matter of Daughters of Sarah Nursing Ctr., Inc. v Novello, 69 AD3d at 1152).
We reach a similar conclusion on petitioner's remaining challenge concerning the ALJ's determination that OMIG properly rejected petitioner's reimbursement of cable television as part of the capital cost component. Petitioner contends that Putnam Ridge's cable television service costs were reimbursable under DOH regulations governing nursing home minimal standards (see 10 NYCRR 415.5 [h]; see also 10 NYCRR 415.1 [a] [2], [5]). In this respect, petitioner contends that the ALJ was required to adhere to established DOH precedent set forth in its prior administrative hearing determination in Matter of Susquehanna Nursing & Rehabilitation Center (Dept of Health, Rate Audit No. 09-2552 [Oct. 14, 2011]), which, in relevant part, allowed reimbursement of cable expenses under the reasoning that a failure to do so would unacceptably diminish the residents' quality of life.
"In general, if an administrative agency does not follow its own precedent when faced with similar facts, its determination will be deemed to be arbitrary and capricious unless it explains its departure from such precedent" (Matter of Lyell Mt. Read Bus. Ctr. LLC v Empire Zone Designation Bd., 129 AD3d 137, 145 [3d Dept 2015] [citation omitted]). "Absent such an explanation, failure to conform to agency precedent will, therefore, require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made" (Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 520 [1985] [citations omitted]). Here, the ALJ's determination did not entirely disregard the finding of the Susquehanna decision, which explicitly noted that it was limited to its unique circumstances. Rather, the ALJ noted that Susquehanna [*8]did not directly address the requirement that any capital costs for equipment rental fees, which would apply to cable or satellite televisions costs, be "separately specified in the charge to the provider" as required by the Medicare Provider Reimbursement Manual (see Medicare Provider Reimbursement Manual, part 1, ch 28, § 2806.3 [B]; see also 10 NYCRR 86-2.17 [a]).
In this respect, the ALJ necessarily determined that cable or satellite television costs contain two components, one operating (i.e., costs for television service) and one capital (i.e., costs for equipment rental). That finding is consistent with the testimony at the hearing from both the rate auditor and the chief auditor, who noted that television service costs were disallowed as capital costs because they were part of the operational portion of the rate. To this end, we find that the ALJ's acceptance of the OMIG auditors' testimony is rational and supported by the evidence (see Matter of Gignac v Paterson, 70 AD3d at 1312).
Moreover, as noted by the ALJ, the record contains no indication that petitioner provided billing invoices for cable services that separately identified the fees for renting the cable boxes as opposed to those fees attributable to providing the service itself. Petitioner asks that we ignore this distinction and, consequently, that we overrule OMIG and find all costs pertaining to cable are allowable as capital costs, regardless of whether they are operational or capital in nature. However, petitioner's own accountant testified that capital costs are supposed to cover equipment rentals and, as to cable television, that should include rented cable boxes. In this respect, petitioner's request is undermined by its own proof regarding which component of the cable television costs could properly be characterized as a capital expenditure. Ultimately, we find that petitioner's failure to provide the separated costs provided a reasonable basis for OMIG to deny reimbursement, and we decline to overturn its determination (see Matter of New York City Health & Hosps. Corp. v Zucker, 173 AD3d 511, 512 [1st Dept 2019], lv denied 34 NY3d 905 [2019]; see also Matter of Fast Help Ambulette, Inc. v New York State Dept. of Health, 198 AD3d at 759; Matter of Odd Fellow & Rebekah Rehabilitation & Health Care Ctr., Inc. v Commissioner of Health of the State of N.Y., 107 AD3d at 1097; Matter of Clin Path v New York State Dept. of Social Servs., 193 AD2d 1034, 1036 [3d Dept 1993]).
We have examined petitioner's remaining contentions and find them without merit.
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: In October 2005, the original mortgage was assigned and modified, which resulted in a reduction of the original mortgage's interest rate to 6.27% with no change to the maturity date.

Footnote 2: Notably, petitioner reported the loan in a different schedule in its cost report because the loan was made to Putnam Ridge Realty, LLC, which entity was the landlord of the facility and a "related party" for purposes of reporting.

Footnote 3: Neither the record nor the parties have given any indication that petitioner directly challenged DOH's 2015 rate determination.

Footnote 4: Respondents advise that petitioner filed a rate appeal concerning its 2016 rate, and that a final determination denying its challenge was issued in February 2022. According to respondents, petitioner has not sought a hearing to review that determination. As to the 2017 rate, petitioner initially challenged the preliminary rate set by DOH, but later withdrew that challenge and acquiesced to the adjustment in reimbursement methodology.

Footnote 5: Under this adjustment in reimbursement methodology, petitioner would no longer receive any reimbursement for mortgage-related costs (i.e., amortization, mortgage interest and mortgage insurance), and would instead receive an increase in its return of equity over the remaining useful life of the facility (see 10 NYCRR 86-2.21 [e]). The effect of this adjustment was a significant reduction in petitioner's reimbursement for the applicable rate period, as the previously reimbursed mortgage-related costs far exceeded the increase in return of equity reimbursement.

Footnote 6: Petitioner commenced this proceeding against the previous Commissioner of Health, Howard Zucker, and then-Acting Medicaid Inspector General, Erin Ives. Frank T. Walsh Jr. is now Acting Medicaid Inspector General, and Mary T. Bassett is currently Commissioner of Health.

Footnote 7: In its reply brief, petitioner insists that the language in 10 NYCRR 86-2.13 (b) authorized it to contest DOH's determination as part of this proceeding. However, in light of our determination that petitioner's challenge to DOH's rate-setting determination concerns methodology, we reject this contention. In any event, 10 NYCRR 86-2.13 (b) merely pertains to the appropriate timing of a rate appeal based upon computational errors and is inapplicable to the matter before us (see generally Matter of Pinegrove Manor II, LLC v Daines, 60 AD3d 767, 768 [2d Dept 2009], lv denied 14 NY3d 713 [2010]; Matter of Westmount Health Facility v Commissioner of N.Y. State Dept. of Health, 205 AD2d 991, 993 [3d Dept 1994]; Charles P. Sitrin Nursing Home Co. v McBarnette, 198 AD2d 579, 580 [3d Dept 1993], lv denied 83 NY2d 752 [1994]).

Footnote 8: We note that, on this appeal, both petitioner and respondents have thoroughly briefed whether petitioner's sinking fund payments were reimbursable pursuant to 10 NYCRR 86-2.21 (e) (3) (c) as amortization payments. However, whether the sinking fund payments were reimbursable as amortization payments was ultimately irrelevant to OMIG's audit adjustments, as the DAR and FAR reveal that OMIG had disallowed all of the mortgage-related costs for those years, including both amortization and interest payments, based upon its conclusion that DOH did not recognize the 2012 loan as an approved refinancing. The rate auditor testified that his initial audit calculations allowed for reimbursement on the interest payments for the 2012 loan, but disallowed amortization based upon statements from petitioner's accountant, who noted that no amortization payments were made during that period. While the auditor's working papers confirm his initial plan for adjusting petitioner's reimbursement, that proposed course of action did not ultimately factor into the determination in the DAR and FAR. Moreover, the determination to only reimburse for interest was made as part of DOH's 2015 rate-setting action, to which petitioner raised no challenge following its receipt of the rate computation sheet for that year. Accordingly, we need not determine whether DOH's actions were appropriate in that respect.